816 F.2d 869
 55 USLW 2556
 The UNITED STATES
v.
Hilmer Burdette SANDINI, Ernest G. Rockwell, George White
Kost, Ronald Paul Urban, Carol Ann Hineman Sandini, Sandra
Jean Sandini, Michael Frawley, David Thompson, George
Strickler, Sherman John Glunt, Santos Ruiz, Robert Kotula,
Eugene Anthony Gesuale, Robert Maker, Vincent Ciraolo,
Richard Moody, Edward Mills, Rex Foster, Kenneth Hill, Harry
Jessup, Rose Jessup.
Appeal of Ronald Paul URBAN.
The UNITED STATES
v.
Hilmer Burdette SANDINI a/k/a H.B. Sandini, Sandy, The Old
Man; George White Kost a/k/a George Kostishach,
Maitre D', Richard Reed; Ronald Paul Urban.
Appeal of Ronald Paul URBAN.
 Nos. 86-3125, 86-3131.
 United States Court of Appeals,
Third Circuit.
 April 1, 1987.
Rehearing Denied June 3, 1987.
 
 Gary B. Zimmerman (argued), Pittsburgh, Pa., for appellant Ronald Paul urban.
 Constance M. Bowden (argued), Asst. U.S. Atty., J. Alan Johnson, U.S. Atty., Pittsburgh, Pa., for appellee United States.
 Before GIBBONS, Chief Judge, WEIS and HUNTER, Circuit Judges.
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 Defendant chose not to take the witness stand during the guilt phase of this criminal trial, and the district court barred him from testifying in the forfeiture proceedings which followed the guilty verdict. We conclude that this ruling was erroneous and that a defendant's rights may be accommodated reasonably through bifurcation of the evidentiary phases. Consequently, we will grant a new trial on the forfeiture aspect of the case.
 
 
 2
 Additionally, we uphold against constitutional challenge a statutory provision establishing a preponderance of the evidence as the government's burden of proof for criminal forfeiture after a guilty verdict. We also reject the defendant's attack on a statutory presumption, which permits an inference that property is subject to forfeiture if acquired during the period of illegal drug trafficking.
 
 
 3
 Defendant was convicted on a charge of conspiracy, and on two counts for possession and distribution of cocaine. In addition, he was found guilty of operating a continuing criminal enterprise in violation of 21 U.S.C. Sec. 848. He was sentenced to a twenty-year term of imprisonment, to be served concurrently with three sentences of fifteen years each, and followed by a special parole term. The court also ordered the forfeiture of certain property.
 
 
 4
 Defendant was a member of a major cocaine distribution ring in Western Pennsylvania. The participants brought large quantities of cocaine from Florida into Pennsylvania by private plane, and on the return trip carried cash to pay for the drugs. The conspiracy, extending from October 1981 to May 1984, resulted in the indictment of approximately twenty persons.
 
 
 5
 Defendant began his association with the group by delivering cocaine and picking up money for codefendant Kost. In time he became Kost's partner. Evidence showed that defendant supplied cocaine to Mimi Bowman, Robert Feist, James McAuliffe, Sonny Filipiak, Robert Sheppard, and Irwin Jackson. In several instances defendant said that he earned $50,000 a month from the drug traffic. He also made substantial purchases and investments during the period, including some in partnership with Kost.
 
 
 6
 The defendant's case was consolidated with that of other defendants, and after a lengthy trial the jury returned guilty verdicts. The trial judge then instructed the same jurors on the government's claim for forfeiture of the defendant's property. In response to special interrogatories, the jury found that the following properties were subject to forfeiture: a mobile home, a house, a car wash, and a building containing a laundromat and a delicatessen. The court entered an order to that effect.
 
 
 7
 On appeal, defendant raises a number of issues. He contends that the evidence was insufficient to show that he acted in concert with five or more persons as an organizer, supervisor, or manager as required for conviction under 21 U.S.C. Sec. 848. He also alleges the government failed to present adequate evidence that he distributed or aided and abetted the distribution of cocaine on January 27, 1984, and January 31, 1984. In addition, defendant argues that the evidence proved multiple conspiracies rather than the single one charged in the indictment. After careful consideration, we conclude that these contentions lack merit and, therefore, will affirm the convictions.
 
 
 8
 Defendant has raised another issue, however, which requires discussion. He alleges that the forfeiture statute, 21 U.S.C. Sec. 853(d), violates the due process clause.
 
 
 9
 Title 21 U.S.C. Sec. 848(a) provides that in addition to a mandatory prison term and fine, a person "who engages in a continuing criminal enterprise" is subject to the "forfeiture prescribed in section 853." In turn, Sec. 853(a) lists property subject to forfeiture, including that "derived from, any proceeds the person obtained ... as the result of such violation," or used "to facilitate commission" of the crime. In the event of a violation of Sec. 848, the offender additionally must forfeit any property affording a "source of control over, the continuing criminal enterprise."[1]
 
 
 10
 Section 853(d) establishes a "rebuttable presumption at trial" that the possessions of a convicted person are subject to forfeiture "if the United States establishes by a preponderance of the evidence" that the property was acquired during or within a reasonable period after the violation and there was no other "likely source for such property."[2]
 
 
 11
 Legislative history reveals Congress' belief that forfeiture would provide as effective a weapon against the drug trade as it would in combatting organized criminal activity through the RICO statute. Because an earlier version of the forfeiture provision contained limitations and ambiguities that had hindered its use in drug cases, amendments were enacted in 1984 to improve the procedures.
 
 
 12
 These statutory modifications were designed to emphasize criminal, rather than civil, forfeitures so that prosecutors could develop in one proceeding the facts necessary to establish guilt as well as to justify forfeiture. See S.Rep. No. 225, 98th Cong., 2d Sess. 191-212, reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3374-3395. The Senate Judiciary Committee noted that the government's burden of proof set out in the amendments is the civil standard. The statutory "presumption" was characterized as "a permissive and rebuttable inference" and, therefore, was expected to be within constitutional bounds. Id. at 3395.
 
 
 13
 In addition to the statutory provisions, Fed.R.Crim.P. 31(e) governs forfeiture proceedings, and requires that "a special verdict shall be returned as to the extent of the interest or property subject" to sanction.
 
 
 14
 In the case before us, the trial was "bifurcated." The government presented all of its evidence, including that relevant to forfeiture, in the first, or guilt phase of the proceeding. Defendant did not testify during that part of the trial.
 
 
 15
 Only after the jury returned its guilty verdict did the case proceed to resolution of the forfeiture question. The district judge refused to allow defendant to testify at that time. Defense counsel objected on constitutional grounds to permitting defendant to testify on forfeiture only in the guilt phase of the trial. As counsel asserted, "You have a right not to present any evidence, a constitutional right not to testify, but if you want to use that right, you have to make the Hobson's choice, and lose your property, if it's ever mentioned. That isn't fair and can't be right." The statutory presumption, counsel continued, "requires the defendant to put on a case in his criminal charge."
 
 
 16
 Nevertheless, relying on precedent within the district court, the trial judge limited the forfeiture phase to the arguments of counsel and instructions to the jury. The charge included an explanation of the statutory presumption.
 
 I.
 
 17
 A brief review of the two kinds of forfeiture actions aids an understanding of the defendant's position. Sharp differences exist between the in rem and in personam forfeitures, and failure to observe them sometimes leads to confusion.
 
 
 18
 Civil forfeiture is an in rem proceeding. The property is the defendant in the case, and the burden of proof rests on the party alleging ownership. The innocence of the owner is irrelevant--it is enough that the property was involved in a violation to which forfeiture attaches.
 
 
 19
 In rem procedures enjoy a venerable history and existed in Mosaic law if not in other ancient codes as well. Blackstone speaks of the Biblical rule: "When an ox gore a man or a woman to death, the ox must be stoned; its flesh may not be eaten." Exodus 21:28. See Goldsmith-Grant Co. v. United States, 254 U.S. 505, 511, 41 S.Ct. 189, 191, 65 L.Ed. 376 (1921). In medieval times, the law of deodands required forfeiture of a chattel that had caused the death of a person. See Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 681, 94 S.Ct. 2080, 2090, 40 L.Ed.2d 452 (1974).[3]
 
 
 20
 In rem forfeiture was used in the early history of this country to enforce the revenue laws and to provide a remedy in maritime actions. See United States v. Stowell, 133 U.S. 1, 17, 10 S.Ct. 244, 247, 33 L.Ed. 1 (1890). However inapplicable its original justification may be today, in rem, or civil forfeiture, has become "too firmly fixed in the punitive and remedial jurisprudence of the country to be now displaced." Goldsmith-Grant Co., 254 U.S. at 511, 41 S.Ct. at 191.
 
 
 21
 In contrast, criminal or in personam forfeiture differs because its prime objective is punishment of the owner. See United States v. Kravitz, 738 F.2d 102, 106 (3d Cir.1984), cert. denied, 470 U.S. 1052, 105 S.Ct. 1752, 84 L.Ed.2d 816 (1985). The owner or possessor of the property is the defendant, and the burden of proof falls on the government. Insofar as the forfeiture rests on illegal activity, the elements of the underlying crime must be established by proof beyond a reasonable doubt.
 
 
 22
 Criminal forfeiture of property was disfavored during this country's infancy. The Act of April 30, 1790, ch. 9, Sec. 24, 1 Stat. 117, stated that "no conviction or judgment ... shall work corruption of blood, or any forfeiture of estate." See also U.S. Const. art. III, Sec. 3. The statutory proscription rejected the traditional forfeiture of all of a felon's property even if it had no connection with the crime. The colonists' experience with the English law of forfeiture created an antipathy toward its use, which was reflected in its prohibition by the First Congress.
 
 
 23
 Although civil actions for forfeitures continued, criminal forfeitures remained neglected until recent years when Congress revitalized them as penalties for RICO and narcotics violations.[4]
 
 II.
 
 24
 Because criminal forfeitures are based on findings of personal guilt, efficiency suggests that the issues of culpability and forfeiture be determined in the same proceeding. The desirability of this approach becomes apparent when one recognizes that Congress intended forfeiture as punishment for the underlying crime.[5] Completely merging the guilt and forfeiture phases of a trial, however, presents the potential for clashes between competing constitutional rights.
 
 
 25
 A criminal defendant has the right to decline to testify at trial. He also may insist that his property not be taken without due process of law. Where some reasonable accommodation of both is available, the defendant's right to retain property arguably not subject to forfeiture should not be compromised or defeated by his decision to stay off the witness stand during the guilt phase of the trial. See United States v. U.S. Currency, 626 F.2d 11 (6th Cir.), cert. denied, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 290 (1980).
 
 
 26
 In United States v. Cauble, 706 F.2d 1322 (5th Cir.1983), cert. denied, 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984), the court of appeals suggested that the jury should not consider the forfeiture issues until it has returned guilty verdicts. The court remarked that bifurcation would ease the jurors' task, be more convenient for the trial judge and fairer to the defendant. Id. at 1348. No conflict between competing constitutional rights was at issue in that case, and the divided trial procedure was not reviewed with that consideration in mind.
 
 
 27
 In this case, the district court did bifurcate the trial--but only partially, and not enough to accommodate the defendant's right to remain silent. Defendant was placed in a difficult position. If he wished to testify, for example, that some of the property was outside the reach of the statute, he was required to take the stand in the guilt phase. Once having chosen to testify, even in a very narrow area, he could have been exposed to cross-examination on at least some aspects of the offenses charged. A criminal defendant who takes the stand waives, to some extent, his right to remain silent. See Brown v. United States, 356 U.S. 148, 154-55, 78 S.Ct. 622, 626, 2 L.Ed.2d 589 (1958); Johnson v. United States, 318 U.S. 189, 195-96, 63 S.Ct. 549, 552-53, 87 L.Ed.2d 704 (1943); United States v. Lamb, 575 F.2d 1310, 1314 (10th Cir.), cert. denied, 439 U.S. 854, 99 S.Ct. 165, 58 L.Ed.2d 160 (1978). See also J. Weinstein & M. Berger, Weinstein's Evidence p 611 (1985); 8 J. Wigmore, Evidence in Trial at Common Law Sec. 2276 (J. McNaughton rev. ed. 1961); S. Saltzburg & K. Redden, Federal Rules of Evidence Manual 565, 566 (4th ed. 1986).
 
 
 28
 Realistically, from the jurors' standpoint, the temptation to draw an adverse and impermissible inference from the defendant's failure to testify cannot but be intensified if he testifies about his property yet remains conspicuously silent about the charges against him. A defendant who does not wish to testify in his criminal trial, therefore, as counsel expressed it, faces a Hobson's choice.[6]
 
 
 29
 To make a defendant's position even worse, the statute creates a presumption to assist the government in meeting its burden. If the prosecution shows that a defendant acquired property during the relevant period and that it likely came from no other source, the fact finder may infer that the drug trafficking funded the purchase. The presumption, to be sure, is a rebuttable one and therefore is constitutional. Nevertheless, the right of rebuttal may be illusory when made contingent on waiving the privilege not to testify during the trial.
 
 
 30
 The defendant's quandary raises serious doubts about the practice of consolidating the guilt and forfeiture matters for trial. The question here is not whether a procedure that merges guilt and punishment phases into a unitary trial is constitutionally deficient. See McGautha v. California, 402 U.S. 183, 208, 91 S.Ct. 1454, 1467, 28 L.Ed.2d 711 (1971). We need not discuss that issue here; rather, the difficulty is of a lesser order, one which may be resolved by exercise of our supervisory powers over the conduct of criminal trials within this circuit.
 
 
 31
 Accommodation is readily achieved by expansion of bifurcation so that the forfeiture issue is addressed only after the jury returns a guilty verdict on the charges in the indictment. After that finding, both the prosecution and the defense may present evidence to the same jury, which can resolve the forfeiture issue through a special verdict pursuant to Rule 31(e).
 
 
 32
 To promote fairness and simplicity in application, we invoke our supervisory powers to require that, in the future, in personam forfeiture proceedings, including evidence on that issue, be bifurcated from the guilt phase of criminal trials. We caution, however, that the verdict in the guilt phase must be based on adequate evidence and a standard of proof beyond a reasonable doubt. Evidence received in the forfeiture phase, and therefore not before the jury when it determined guilt, may not be used in post-trial motion proceedings or on appeal to sustain the conviction itself.
 
 
 33
 Because the bifurcation in the case at hand was unduly restricted, thereby effectively denying defendant the opportunity to testify, we will order a new trial restricted to the issue of forfeiture. Since the original jury has been dismissed, obviously a new one must be selected to carry out this limited assignment.
 
 III.
 
 34
 Bifurcation, however, does not resolve all of the defendant's objections. His attack is not confined to procedure; he also argues that the statutory presumption is unconstitutional because it reduces the government's burden to a preponderance of the evidence instead of proof beyond a reasonable doubt. He cites United States v. Long, 654 F.2d 911 (3d Cir.1981), where the district court had issued a pre-trial order prohibiting the defendant from transferring his property that ultimately might be subject to criminal forfeiture. In that case, we said that the prosecution must demonstrate it was "likely to convince a jury, beyond a reasonable doubt, of two things: one, that the defendant is guilty ... and two, that the profits or properties at issue are subject to forfeiture." Id. at 915.
 
 
 35
 Moreover, the Advisory Committee note to Fed.R.Crim.P. 31(e), referring to the 1974 amendment to the rule requiring special findings, stated that "[t]he assumption of the draft is that the amount of the interest or property subject to criminal forfeiture is an element of the offense to be alleged and proved."[7] In addition, Fed.R.Crim.P. 7 provides that the indictment must "allege the extent of the interest or property subject to forfeiture." See United States v. Lewis, 759 F.2d 1316, 1324 (8th Cir.), cert. denied, --- U.S. ----, 106 S.Ct. 406, 88 L.Ed.2d 357 (1985); United States v. Brown, 744 F.2d 905, 909 & n. 3 (2d Cir.), cert. denied, 469 U.S. 1089, 105 S.Ct. 599, 83 L.Ed.2d 708 (1984).
 
 
 36
 In the forfeiture phase here, the district judge instructed the jury that the government bore the burden of establishing its case by a preponderance of the evidence. Although the prosecution supports that proposition, its brief suggests an alternate interpretation, one that would permit proof of facts underlying the presumption by a preponderance of the evidence, yet leave the overall burden of one beyond a reasonable doubt. We reject that construction as inconsistent with Congressional intent. It is clear enough to us that the statute calls for the charge given by the trial judge.
 
 
 37
 Although defendant relies on United States v. Long, that case was decided before the 1984 amendment to Sec. 853 addressed the burden of proof. In addition, Long was concerned with a pretrial order tying up a defendant's property before a court had assessed guilt on the underlying criminal offense. The issue now before us, however, is the constitutionality of a statute establishing the burden of proof in the limited part of a forfeiture proceeding that occurred only after conviction of the predicate offense.
 
 
 38
 Moreover, Long did not purport to impose a constitutional standard for establishing that property is subject to forfeiture. Unquestionably, the burden of proof beyond a reasonable doubt applies to the elements of a criminal offense and is constitutionally mandated. Patterson v. New York, 432 U.S. 197, 200-01, 97 S.Ct. 2319, 2321-22, 53 L.Ed.2d 281 (1977). As indicated above, however, forfeiture is punishment for the crime. Forfeiture is not an element of the continuing legal enterprise offense, but simply an additional penalty for that proscribed conduct. United States v. Grammatikos, 633 F.2d 1013, 1025 (2d Cir.1980).
 
 
 39
 The argument that forfeiture is an element which must be proved beyond a reasonable doubt confuses culpability with consequences. Section 853(a) expressly says that "[t]he court, in imposing sentence ... shall order, in addition to any other sentence ... that the person forfeit ... all property described in this subsection." The statute, in effect, characterizes forfeiture as punishment for the crime and not part of the offense itself.
 
 
 40
 Nor does the requirement of including forfeiture allegations in the indictment dictate a contrary conclusion. Fed.R.Crim.P. 7 requires notice that the government will seek a form of enhanced penalty. Notice of that proposed action, however, reflects an aspect of due process unrelated to the necessity of proving each element of the offense. See United States v. Raimondo, 721 F.2d 476 (4th Cir.1983), cert. denied, 469 U.S. 837, 105 S.Ct. 133, 83 L.Ed.2d 74 (1984).
 
 
 41
 In other settings, statutes permitting enhanced penalties have established the prosecution's burden of proof as a preponderance of the evidence. See 18 U.S.C. Sec. 3575 (increased sentence for dangerous special offenders); United States v. Palma, 760 F.2d 475, 480 (3d Cir.1985) (under 18 U.S.C. Sec. 3580(d), government must prove victim's loss for restitution purposes by a preponderance). See also McMillan v. Pennsylvania, --- U.S. ----, ----, 106 S.Ct. 2411, 2416, 91 L.Ed.2d 67 (1986) (to impose mandatory minimum sentence state need only prove by preponderance that defendant possessed firearm).
 
 
 42
 The legislative history makes clear that Congress sought to make the government's burden of proof in criminal forfeitures the same as that in the civil realm. Such a provision is valid to the extent that the forfeiture proceeding occurs only after a conviction based on the constitutional standard. The statute, moreover, does not shift the burden of persuasion--it remains with the prosecution. Because the charge to the jury on forfeiture took place after the government had proved guilt beyond a reasonable doubt, we conclude that use of the preponderance standard only to establish the extent of the penalty withstands constitutional scrutiny.
 
 IV.
 
 43
 Although not clearly articulated in the defendant's brief, we understand that he also asserts the lack of a rational connection between the facts that the government must prove and the ultimate fact that the presumption may establish. Applied here, defendant argues that the fact property was acquired after he began to traffic in narcotics fails to establish that the proceeds from the illegal enterprise more likely than not were used to pay for the investments.
 
 
 44
 In some circumstances the defendant's argument might marshal some force. But as the Court stated in Ulster County Court v. Allen, 442 U.S. 140, 157, 99 S.Ct. 2213, 2224, 60 L.Ed.2d 777 (1979), "[w]hen reviewing this type of device, the Court has required the party challenging it to demonstrate its invalidity as applied to him." Only if "under the facts of the case, there is no rational way the trier could make the connection permitted by the inference" does a permissible inference affect the burden of proof. See also Barnes v. United States, 412 U.S. 837, 843-47, 93 S.Ct. 2357, 2361-63, 37 L.Ed.2d 380 (1973).
 
 
 45
 In this case, the jury was free to reject the inference derived from the statutory presumption, and the burden of proof remained with the government. The huge profits generated by the illegal drug trade are well known, and the jury rationally may give some weight to the statutory inference when other evidence demonstrates sudden and unexpected wealth. On its face, we cannot say the presumption is improper.
 
 
 46
 Because the forfeiture question must be remanded to allow the parties to present evidence on that issue, it would be inappropriate for us to speculate how the statutory presumption might affect the proof. The presumption here does not exist in a vacuum and to establish its invalidity the defendant must take the inference in the context of other facts in the record. We conclude at this stage only that the inference is not facially invalid. Ulster County v. Allen, 442 U.S. at 163, 99 S.Ct. at 2227.[8]
 
 
 47
 Accordingly, we conclude that the order of forfeiture must be set aside and the matter remanded to the district court for a trial on that issue. The convictions on the underlying criminal offenses, however, will be affirmed.
 
 
 
 [1]
 Section 853(a) lists as property subject to forfeiture:
 "(1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;
 (2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation; and
 (3) in the case of a person convicted of engaging in a continuing criminal enterprise in violation of section 848 of this title, the person shall forfeit, in addition to any property described in paragraph (1) or (2), any of his interest in, claims against, and property or contractual rights affording a source of control over, the continuing criminal enterprise."
 
 
 [2]
 Section 853(d) reads:
 "There is a rebuttable presumption at trial that any property of a person convicted of a felony under this subchapter or subchapter II of this chapter is subject to forfeiture under this section if the United States establishes by a preponderance of the evidence that--
 (1) such property was acquired by such person during the period of the violation of this subchapter or subchapter II of this chapter or within a reasonable time after such period; and
 (2) there was no likely source for such property other than the violation of this subchapter or subchapter II of this chapter.
 
 
 [3]
 Oliver Wendell Holmes wrote of the ancient custom of chopping down a tree from which a man fell to his death: "the liability seems to have been regarded as attached to the body doing the damage, in an almost physical sense. An untrained intelligence only imperfectly performs the analysis by which jurists carry responsibility back to the beginning of a chain of causation. The hatred for anything giving us pain, which wreaks itself on the manifest cause, and which leads even civilized man to kick a door when it pinches his finger, is embodied in the noxae deditio and other kindred doctrines of early Roman law." O. Holmes, The Common Law 11-12 (1st ed. 33d printing 1938)
 
 
 [4]
 For a brief history of in rem and in personam forfeitures, see Reed & Gill, RICO Forfeitures, Forfeitable "Interests," and Procedural Due Process, 62 N.C.L.Rev. 57, 60-69 (1983)
 
 
 [5]
 For this reason we do not believe a separate notice of appeal from a forfeiture order is necessary in the circumstance of this case, where the forfeiture was ordered before sentence was imposed. Cf. United States v. Martino, 681 F.2d 952, 953 n. 10 (5th Cir.1982), aff'd sub nom., Russello v. United States, 464 U.S. 16, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983); United States v. Kopituk, 690 F.2d 1289, 1343 (11th Cir.1982), cert. denied, 463 U.S. 1209, 103 S.Ct. 3542, 77 L.Ed.2d 1391 (1983). In reality, forfeiture is part of the sentence; consequently, an appeal from the conviction measured from the date of judgment includes the forfeiture. Consequently, the ten day limitation for appeal set out in Fed.R.App.P. 4(b) also applies to forfeiture proceedings
 
 
 [6]
 Liveryman Thomas Hobson (1544-1631) of Cambridge, England, rented horses and gave his customers only one choice--that is, "to take the horse which stood near the stable door." R. Steele, The Spectator No. 509 (1712)
 
 
 [7]
 An Advisory Committee note is an explanation of, or an aid to interpretation of, a procedural rule. It is somewhat similar to a legislative history not having the force of law. Indeed in this instance, the note was careful to explain that it set forth only an assumption
 
 
 [8]
 One other factor complicating the criminal forfeiture proceedings is the possible later use of a defendant's testimony for self-incrimination. The parties have not raised that issue, and we therefore do not pass on it. See Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); United States v. Perry, 788 F.2d 100 (3d Cir.), cert. denied, --- U.S. ----, 107 S.Ct. 218, 93 L.Ed.2d 146 (1986) (defendant may not be compelled to incriminate himself in order to defend against deprivation of a constitutional right). But see United States v. Rylander, 460 U.S. 752, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983) (use of the right not to incriminate oneself is not without cost); McGautha v. California, 402 U.S. at 183, 91 S.Ct. at 1454 (combining guilt and punishment phases in a trial is not unconstitutional); Gniotek v. City of Philadelphia, 808 F.2d 241, 245 (3d Cir.1986)