**UNITED STATES of America,**

v.

**Dennis E. PRYBA, Barbara A. Pryba, Jennifer G. Williams, and Educational Books, Inc.**

**Crim. No. 87–00208–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Nov. 18, 1987.

See also, 674 F.Supp. 1502 and 674 F.Supp. 1504.

---

Lawrence Leiser, Asst. U.S. Atty., Alexandria, Va., for U.S.

Thomas J. Morris, Jr., Arlington, Va., for Dennis E. Pryba.

William B. Cummings, Alexandria, Va., for Barbara A. Pryba.

Plato Cacheris, Washington, D.C., for Jennifer G. Williams.

J. Frederick Sinclair, Alexandria, Va., for Educational Books, Inc.

---

**MEMORANDUM OPINION**

ELLIS, District Judge.

This unprecedented case is fairly brimming with novel issues.[1] Those discussed here are prompted by the use, for the first time, of RICO's forfeiture provisions in the obscenity context. These issues arise as a consequence of the jury's verdict convicting the defendants of RICO obscenity violations.[2] Because the trial was bifurcated, forfeiture issues were postponed until, if needed, the second phase of the trial. That time has now arrived and these issues must be resolved.

They are, specifically:

1) What is the government's burden of proof in RICO forfeiture proceedings?

2) In RICO obscenity prosecutions where practical considerations place limits on the amount of material that can be attacked as obscene, can the United States show by circumstantial evidence that material not submitted to the factfinder and found obscene is nonetheless obscene so that the business can be labeled as essentially the business of selling obscenity?

Each question is separately addressed.

## I. *RICO Forfeiture Burden of Proof*

■ There is, surprisingly, no direct guidance on the burden of proof in RICO forfeiture proceedings. The RICO statute itself is silent. Equally silent is the remarkably sparse legislative history. No decision directly confronts the issue. Where it is mentioned in RICO decisions, the answer is simply assumed, with neither argument nor discussion to illuminate the issue. The parties' positions are predictable. For defendants the reasonable doubt

---

1. *See, United States v. Pryba,* 674 F.Supp. 1504 (E.D.Va.1987) (constitutionality of RICO's forfeiture provisions as applied to obscenity cases).

2. Defendants were indicted under RICO for dealing in obscene matter, specifically, four video tapes and nine magazines. The jury found obscene the four video tapes, "She–Male Confidential, Bizarre Encounter #9," "Wet Shots," "The Girls of A–Team," and "Punishment of Anne," and six magazines, "Torment," "She ... who must be obeyed," "Bottoms Up," "Slave Training," "Tied Up," and "Tender Shavers." The jury found one magazine, "Super Bitch," not to be obscene, and could not agree on two of the magazines, "Crotches" and "Poppin Mamas." A mistrial was granted with respect to these two magazines.

standard is an article of faith; they rely on cases that assume without deciding that reasonable doubt is the forfeiture standard as well as the standard for determining guilt or innocence. The government, eager to avoid the rigor of the reasonable doubt standard, relies chiefly on non-RICO authority. Both arguments merit scouting, but ultimately neither is dispositive.

Typical of defendants' authorities is *United States v. Cauble*, 706 F.2d 1322 (5th Cir.1983), *cert. denied*, 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984). There the court upheld a jury instruction that stated once the defendant was found guilty of a RICO violation, it was the jury's duty "to determine whether the government has proven *beyond a reasonable doubt* that [defendant's] interest ... is subject to forfeiture." 706 F.2d at 1347–48 (emphasis added). The standard of proof is merely stated without argument, discussion or justification. *United States v. Horak*, 633 F.Supp. 190 (N.D.Ill.1986) is essentially similar. There, in a bifurcated RICO trial, the court held that:

> [i]n order for the government to prevail on an (a)(2) forfeiture, it must show each of the four categories of assets have some connection (a nexus) with the underlying racketeering activity.... That nexus is shown when the government proves *beyond a reasonable doubt* that the relevant category of property provided the Defendant with a source of influence over an enterprise and Defendant has a property interest in that same enterprise.

633 F.Supp. at 199–200 (emphasis added). Again, the appropriateness of the proof standard is assumed without discussion. In another case defendants cite, the parties agreed that the nexus between property subject to forfeiture and the RICO violation had to be proved beyond a reasonable doubt. *United States v. Ragonese*, 607

F.Supp. 649, 650–51 (S.D.Fla.1985), *aff'd*, 784 F.2d 403 (11th Cir.1986). At least one commentator seems to have made the same assumption[3] and even the government in another case submitted a brief and published material stating the same assumption.[4]

The government's position rests chiefly on *United States v. Sandini*, 816 F.2d 869 (3d Cir.1987), a continuing criminal enterprise (CCE) forfeiture case. Title 21, Section 853(d) provides for a rebuttable presumption in favor of forfeiture:

> There is a rebuttable presumption at trial that any property of a person convicted of a felony under this subchapter or subchapter III of this chapter is subject to forfeiture under this section if the United States establishes by a preponderance of the evidence that—
>
> (1) such property was acquired by such person during the period of the violation of this subchapter or subchapter III of this chapter or within a reasonable time after such period; and
>
> (2) there was no likely source for such property other than the violation of this subchapter or subchapter III of this chapter.

The Third Circuit construed this provision to provide for a preponderance standard throughout a CCE forfeiture proceeding and not just to establish the rebuttable presumption. Quite apart from the fact that it is a CCE case, not a RICO case, and hence distinguishable, *Sandini* may be wrongly decided. In reaching its decision the Third Circuit cited the legislative history of the CCE forfeiture provision as support. 816 F.2d at 876. That history, closely read, suggests the contrary of the *Sandini* result. It states that the presumption, "[f]ramed as a permissive and rebuttable inference rather than a mandatory presumption, ... would appear to meet constitutional standards."[5] The Supreme

---

**3.** *See* Reed, *Criminal Forfeiture Under the Comprehensive Forfeiture Act of 1984: Raising the Stakes,* 22 Am.Crim.L.Rev. 747, 758 n. 66 (1984).

**4.** *See* Brief for the United States in Opposition, *United States v. Cauble,* 706 F.2d 1322 (5th Cir. 1983), *cited in* D. Smith, PROSECUTION AND DEFENSE OF FORFEITURE CASES § 13.01 n.

9 (1985). This position, of course, is not binding on the United States in the present case.

**5.** Comprehensive Crime Control Act of 1984, S.Rep. No. 225, 98th Cong., 2d Sess. 191, 192, *reprinted in* 4 U.S.Code Cong. & Admin.News 3182, 3374, 3375 (1984).

Court's decision in *Ulster County Court v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979) is cited in the legislative history as support. Significantly, *Allen* makes clear that a rebuttable presumption is constitutionally acceptable as long as the device does not "undermine the factfinder's responsibility at trial ... to find the ultimate facts beyond a reasonable doubt." 442 U.S. at 156, 99 S.Ct. at 2224. Thus, *Allen* and the CCE legislative history seem to suggest that permissive rebuttable presumptions established by a preponderance are acceptable in the criminal context provided they do not change the ultimate reasonable doubt standard to be used by the factfinder. Thus *Sandini* may have misread the CCE legislative history. In any event, *Sandini* is distinguishable for RICO has no rebuttable presumption provision analogous to CCE's.[6]

Ultimately persuasive to the Court is Congress' silence in the face of clear evidence in RICO and elsewhere that Congress knows how to change the proof standard when it wishes to do so. Thus, in § 1963(*l*), Congress has provided that a third party owner of assets that may be subject to forfeiture can save his or her interest in the asset by proving by a preponderance of the evidence that he or she is a *bona fide* purchaser or has an interest superior to the defendant's. By choosing not to use the same language in § 1963(a) Congress has invited the inference that the reasonable doubt standard should be employed throughout a RICO proceeding except where there is explicit provision otherwise.

Context adds clarity to Congress' silence on RICO forfeiture burden of proof. There is no requirement in RICO that the guilt or innocence phase of the trial be bifurcated from the forfeiture phase. Often the phases are tried together. *See e.g., Cauble,* 706 F.2d 1322; *United States v. Hess,* 691 F.2d 188 (4th Cir.1982). Surely there can be no question that the reasonable doubt standard applies to the first phase. Almost as free from doubt is the inference that had Congress intended a different standard to apply, it would have recognized and addressed the practical difficulties involved in applying different proof standards to interrelated issues in the same proceeding. Consider, for example, the difficulty a jury might encounter in applying different standards of proof in the same trial in connection, first, with finding the existence of, and drawing the broad outlines of, a RICO "enterprise", which is necessary to determine guilt or innocence; and then defining the details of the enterprise, which may only be relevant to forfeiture. Whether bifurcation would ameliorate these difficulties is unclear. In any event, what little authority exists taken together with Congress' failure to treat the issue explicitly and grapple with the practical problems, persuade the court that the reasonable doubt standard is and should be applicable in RICO forfeiture proceedings.[7]

## II. *Proof of Obscenity By Circumstantial Evidence*

■ At the trial on the issue of guilt or innocence, the government charged as ob-

---

6. Also distinguishable are the government's other authorities. *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1983) was not a RICO case and involved *in rem,* not *in personam,* forfeiture. *United States v. Ginsburg,* 773 F.2d 798 (7th Cir.1985), *cert. denied,* 475 U.S. 1011, 106 S.Ct. 1186, 89 L.Ed.2d 302 (1986), held only that the government did not have to prove beyond a reasonable doubt that legal fees said to be the subject of forfeiture were still in existence at the time of conviction. The existence of assets at the time of conviction is not here in issue. Moreover, the government's chief reliance is language in a dissenting opinion which the court finds inapposite. 773 F.2d at 807 (Ripple, J., dissenting).

To sum up, no dispositive authorities exist. RICO itself is silent and the pertinent decisions merely assume the point in issue, but do not confront or discuss it.

7. As stated, no authority exists which directly addresses the burden of proof applicable to RICO forfeiture. Yet when considering novel issues in a RICO setting, it is worth noting that the rule of lenity applies "even in RICO cases." *United States v. Computer Sciences Corp.,* 689 F.2d 1181, 1190 (4th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). The Court's decision is in accord with the rule of lenity.

scene four video films and nine magazines.[8] The jury found all four videos obscene as well as six of the nine magazines. Of course, the materials found obscene, four videos and six magazines, even assuming numerous copies, were apparently only a small part of the defendants' stock in sexually explicit material. Seeking to overcome this in the trial's forfeiture phase, the government sought to prove by circumstantial evidence that the defendants' businesses as a whole were chiefly in the business of selling obscene material. More specifically, the United States offers a witness, a putative expert in obscenity investigations, who was prepared to testify that based on certain indicia common to obscenity businesses, the defendants' enterprise could be said to be chiefly in the business of selling obscene materials. Included among the indicia relied on by this witness were such factors as the existence of "peep machines", the offering for sale of so-called "rubber goods" or "marital aids", the use of the term "adult" in the store sign, and the pandering of sexually explicit material. From these circumstances, the expert would opine that much of defendants' stock in trade is obscene and that defendants are essentially purveyors of obscenity.

This testimony must be excluded; the First Amendment is an insuperable obstacle to its admission. The evidence runs outside constitutional bounds by *presuming* obscenity from circumstances and from proximity to the convicted material. There is no presumption of obscenity that arises from circumstances or from the fact that material is sexually explicit. On the contrary, there is a presumption that such expressions, however unappealing they may be, are protected by the First Amendment. *Roaden v. Kentucky*, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973). Not until the material is reviewed *in its entirety* by a judge or jury and found to meet the three *Miller–Roth* tests [9] can the material be labeled obscene and undeserving of First Amendment protection. Significantly, obscenity may not be predicated on excerpts; the material as a whole must meet the three tests. *See Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985). Even search warrants for allegedly obscene material cannot issue except through a process "designed to focus searchingly upon the question of obscenity." *Marcus v. Search Warrant*, 367 U.S. 717, 732, 81 S.Ct. 1708, 1716, 6 L.Ed.2d 1127 (1961); *see also United States v. Tupler*, 564 F.2d 1294 (9th Cir. 1977) (seizure of films invalid without examination of contents of the film, notwithstanding sexually explicit photographs on boxes and notwithstanding that recipients were known dealers in sexually explicit materials).

In summary, the government's proffered expert testimony must be excluded. Obscenity is not an infection caught by proximity; it can be established only directly, not circumstantially. However important and laudable Congress' goals may be in adding obscenity to RICO, those goals cannot be achieved at the expense of ignoring the First Amendment. However important the battle against obscenity may be, we cannot permit the First Amendment to be a casualty.

The Clerk of this court is directed to send copies of this Memorandum Opinion to counsel of record.

---

**8.** *See supra* note 2.

**9.** In *Miller v. California*, 413 U.S. 15, 24, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419 (1973), the Supreme Court held that speech may be banned as obscene where:

(a) the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest;

(b) the work describes, in a patently offensive way, sexual conduct defined by the applicable state law; and

(c) the work, taken as a whole, lacks serious literary, political, or scientific value.