UNITED STATES of America,
Plaintiff,

v.

Andre HUGGINS, Defendant.

No. CRIM. 03–091–SLR.

United States District Court,
D. Delaware.

July 8, 2005.

Colm F. Connolly, United States Attorney for the District of Delaware; Shannon Thee Hanson, Assistant United States Attorney for the District of Delaware, Douglas E. McCann, Assistant United States Attorney for the District of Delaware, Wilmington, DE, Counsel for Plaintiff.

Tariq Karim El–Shabazz, Esquire of El–Shabazz and Harris, LLC, Philadelphia, Pennsylvania. Stephen P. Patrizio, Esquire of Dranoff & Patrizio, P.C., Philadelphia, Pennsylvania. Counsel for Defendant.

## MEMORANDUM OPINION

SUE L. ROBINSON, District Judge.

## I. INTRODUCTION

Following a nine day jury trial, defendant Andre Huggins was found guilty on six counts, and not guilty on ten counts, of an indictment charging him with various drug trafficking and money laundering offenses.[1] (D.I.126) The parties agreed that the court, not the jury, would be the finder of fact on forfeiture issues. On February 2, 2005, plaintiff filed its initial position on forfeiture pursuant to 21 U.S.C. § 853 and 18 U.S.C. § 982(a)(1) on counts II, XII, XVI and XII.[2] (D.I.141) Defendant filed his

---

1. On October 12, 2004, a federal grand jury returned a third superseding indictment with notice of forfeiture against defendant. (D.I.80) On January 24, 2005, the jury found defendant guilty of counts II, XII, XIII, XIV, XVI and XVII. He was found not guilty of counts III, IV, V, VI, VII, VIII, IX, X, XI and XV. The jury was unable to reach a verdict on count I. (D.I.126)

2. Plaintiff seeks a personal money judgment and intends to seek property, including defendant's residence at 30 Blue Spruce Drive, Bear, Delaware, as substitute assets to partially satisfy any judgment. (D.I.141).

opposition.[3] Pursuant to Fed.R.Crim.P. 29(c), defendant filed a motion for judgment of acquittal as to each count of his conviction, to which plaintiff filed opposition. (D.I.131, 163, 168) A hearing on the forfeiture and acquittal issues was held on June 8, 2005. (D.I.178) The court has jurisdiction pursuant to 18 U.S.C. § 3231.[4]

## II. FORFEITURE

Following a guilty verdict, the court must ascertain

> what property is subject to forfeiture under the applicable statute. If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense. If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay. The court's determination may be based on evidence already in the record, including any written plea agreement or, if the forfeiture is contested, on evidence or information presented by the parties at a hearing after the verdict or finding of guilt.

Fed.R.Crim.P. 32.2(b)(1).

 The objective of criminal forfeiture is punishment of the defendant in his capacity as the owner or possessor of property. *United States v. Kravitz*, 738 F.2d 102, 106 (3d Cir.1984). "Insofar as the forfeiture rests on illegal activity, the elements of the underlying crime must be established by proof beyond a reasonable doubt." *United States v. Sandini*, 816 F.2d 869, 873 (3d Cir.1987); *Patterson v.*

*New York*, 432 U.S. 197, 200–01, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). Because forfeiture is not an element of the underlying crime, the prosecution need only establish its right to forfeiture by a preponderance of the evidence rather than by proof beyond a reasonable doubt. *Sandini*, 816 F.2d at 877; *United States v. Patel*, 131 F.3d 1195 (7th Cir.1997).

### A. Narcotics Counts: Counts II and XII

A defendant convicted of a drug violation shall forfeit to the United States:

(1) any property constituting or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;

(2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation; and

(3) in the case of a person convicted of engaging in a continuing criminal enterprise in violation of section 848 of this title, the person shall forfeit, in addition to any property described in paragraph (1) or (2), any of his interest in, claims against, and property or contractual rights affording a source of control over, the continuing criminal enterprise.

21 U.S.C. § 853(a). Congress selected unambiguous language to "express its intent that forfeiture be mandatory" and that the definition of "property" be broadly construed. *United States v. Monsanto*, 491

---

**3.** Defendant, pro se, and through counsel has filed papers regarding forfeiture and the motion for judgment of acquittal. (D.I.162, 169, 172, 173, 174, 175). During oral argument on these applications, the court granted defense counsel's request to incorporate defendant's pro se filings into the issues raised in

counsel's papers. (D.I.178) The court also allowed defendant, pro se, to address the court regarding various issues.

**4.** This memorandum opinion constitutes the court's findings of facts as to the amount of money that is forfeitable.

U.S. 600, 609, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989).

## 1. Count II

■ The jury found defendant guilty of count II of the indictment, charging him with distributing cocaine on or about February 21, 2002.[5] (D.I.126) At trial, plaintiff relied on the testimony of a confidential source, Melvin Barner,[6] to prove this count. (D.I.120, 123) Essentially, Barner testified that he purchased 117.8 grams of cocaine from defendant's partner, Ricardo Rogers.[7] The price of the cocaine was $3,500.[8] Although defendant did not physically transfer the cocaine to Barner, the record established that defendant facilitated the transaction by giving Roger's telephone number to Barner. In turn, Barner contacted Rogers for drugs and the deal was consummated. Thereafter, Barner contacted defendant about concerns with this purchase and defendant, in turn, contacted Rogers. Applying the preponderance of evidence standard, the court finds that the gross proceeds of, or facilitating property for, this offense is $3,500.

## 2. Count XII

■ The jury convicted defendant of count XII which charged him with conspiracy to possess with the intent to distribute five kilograms or more of cocaine from on or about April 28, 2003 to on or about July 11, 2003. (D.I.80, 123) The jury's verdict establishes the minimum amount, five kilograms, that the court can order forfeited. (D.I.141, 178) Defendant urges the court to remain at this floor and to resist including amounts unrelated to the conspiracy between himself and Jermaine Franklin.[9] Conversely, plaintiff argues that the preponderance of evidence presented at trial demonstrates that the conspiracy involved at least sixteen kilograms of cocaine. Specifically, defendant admitted to purchasing up to ten kilograms of cocaine from Ricardo Barnaby, and that Franklin stored between two and five kilograms of cocaine for him "a couple of times." (D.I.166) Plaintiff further relies on the testimony of Franklin to argue that defendant dropped off kilogram bricks of cocaine on a weekly basis during the eight week period of the conspiracy. Using a conservative number

5. The indictment charges defendant and Ricardo Rogers, a separately indicted co-conspirator, with violating 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2. (D.I.80)

6. Barner admitted being a paid confidential informant for the Drug Enforcement Administration ("DEA"). (D.I. 120 at 201–203) He also admitted that, in late June 2002, the DEA terminated their working relationship because it was discovered that Barner had provided false information. (*Id.* at 204)

7. Rogers testified that he and defendant were partners in the cocaine trafficking business. (D.I. 121 at 86–198) Rogers was a cooperating witness for the prosecution. In exchange for his cooperation in the investigation and prosecution of defendant, plaintiff agreed to reduce the charges filed against Rogers and to move the court for a reduced sentence. (*Id.* at 88–90; GX 31–A) On February 25, 2004, Rogers pled guilty to four counts of an indict-

ment charging him with drug violations and is currently awaiting sentencing. *United States v. Ricardo Rogers*, Crim. No. 03–097–SLR (D.I.17, 18).

8. DEA supplied Barner with the $3,500 used to buy the drugs.

9. A co-defendant and cooperating witness, Franklin testified that defendant asked permission to use Franklin's apartment as a place to hide his drugs or "stash" in early 2003. (D.I. 133, at 213–214) In exchange for this hiding place, defendant agreed to pay Franklin $2,000 every other week. Franklin was indicted with defendant on September 23, 2003. (D.I.8) Subsequently, Franklin agreed to cooperate against defendant. (GX 19–A; D.I. 36) In exchange for his cooperation and testimony against defendant, Franklin hopes to receive a lesser sentence. (D.I. 133 at 197, 192–204) Franklin is currently awaiting sentencing. (D.I.36)

of "two" for the number of bricks dropped off by defendant results, according to plaintiff, in sixteen kilograms of cocaine. (D.I.141, 162)

To prove count XII at trial, plaintiff presented: (1) the testimony of Franklin; (2) the audiotapes of defendant's telephone calls with various individuals, purportedly negotiating drug deals; and (3) defendant's statements given on August 26, 2003.[10] Although the jury's verdict supports its belief in Franklin's testimony, the court is unable to discern its application to the forfeiture issue. Specifically, because Franklin was unable to testify with certainty as to the number of bricks of cocaine actually delivered by defendant, Franklin's testimony does not establish the amount of cocaine relevant to this count. Instead, defendant's statements as chronicled by law enforcement officers[11] are most telling and provide the clearest explanation of the amount of cocaine involved in count XII.

Special Agent Greene testified that he participated in the execution of a search warrant on defendant's residence on August 26, 2003. (D.I. 132 at 158) After waiving his Miranda rights, defendant provided a "confession."[12] Although defendant initially stated that he was "in a drought," he provided additional statements as the agents detailed the scope of the two year investigation directed at him. (Id. at 198) Greene testified that defendant had acquired up to ten kilograms of cocaine from Ricardo Barnaby[13] during February to August 2003. (Id. at 210) Collins testified that defendant stated that he was partners with Ricardo Barnaby and that he "grabbed as many as ten kilograms, but usually around five" kilograms of cocaine. (D.I. 148 at 35) Miller testified that defendant said "he has known Ricardo Barnaby for approximately six months, and has purchased up to ten kilograms at one time." (Id. at 162–163)

Greene testified that defendant stated that Franklin held one to two kilograms and up to five kilograms for him. (Id. at 200–201) Defendant told Greene that Franklin held for him a "couple of times." (Id. at 201) Similarly, Collins testified that defendant stated "[Franklin] holds one or two kilos, but less than five on a couple of occasions." (D.I. 148 at 35, 54, 72)

These statements implicate two distinct individuals—Barnaby and Huggins—as well as different quantities of cocaine. First, the ten kilograms associated with Barnaby is included in the time frame of count XII; however, defendant argues that his association with Barnaby is outside the scope of the indictment because the specific charge does not reference Barnaby and, therefore, cannot be considered. Rather, defendant asserts that the jury found him guilty of conspiracy to distribute drugs with Jermaine Franklin, exclusively.

The indictment does reference only defendant and Franklin, however, it is particularly broad in referencing other unknown individuals. Specifically, count XII provides:

10. A complete discussion of these statements can be found in the court's memorandum order denying defendant's motion to suppress. (D.I.82)

11. Drug Enforcement Administration Special Agent Eric Miller, Internal Revenue Service Special Agent Raymond Greene and Task Force Officer Lawrence Collins. Together, they were co-case agents in the investigation of defendant. (D.I. 116 at 190)

12. Two other search warrants were executed simultaneously on Jermaine Franklin's residence and the home of defendant's girlfriend. (Id. at 159; D.I. 146 at 40)

13. This individual was not charged as a co-conspirator in the indictment. (D.I.80)

From on or about April 28, 2003, to on or about July 11, 2003, in the State and District of Delaware, Andre Huggins, defendant herein, and Jermaine Franklin, a previously indicted co-conspirator, did knowingly conspire with each other and with others known and unknown to the Grand Jury to possess with the intent to distribute five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A). All in violation of Title 21, United States Code, Section 846.

(D.I.80) Considering this language in light of the preponderance of evidence required for forfeiture, the court finds the record adequate to support ten kilograms of cocaine as the amount involved in this conspiracy.

More specifically, the record reflects that Franklin stored two to five kilograms for defendant a "couple of" times. The court must decipher what defendant meant when using the phrase "couple of." Plaintiff contends defendant was actually referring to more than two kilograms. Support for a broad interpretation of this phrase, plaintiff argues, is found in defendant's use of "couple of dollars" to describe money he stored at his girlfriends' house. A search of the residence resulted in the discovery of $118,000 in cash, an amount significantly higher than defendant's description implied.

Although it is evident that defendant's use of "couple of" did not correctly describe the money recovered at his girl-

friend's residence, it remains unclear what the phrase embodies. Interpreting defendant's statement to mean he stored five kilograms on two occasions at Franklin's residence buttresses his other statement—that he purchased ten kilograms from Barnaby. As a result, the court finds that the total amount of drugs involved in the conspiracy was ten kilograms of cocaine. To that end, the court further finds that the testimony of Special Agent Miller establishes the average price of a kilogram of cocaine at $25,000, resulting in $250,000 in gross proceeds or facilitating property. (D.I. 148 at 152)

## B. Money Laundering Counts: Counts XVI and XVII [14]

■ Title 18 U.S.C. § 982(a)(1) provides for forfeiture of any property, real or personal, involved in such offense, or any property traceable to such property upon conviction of a money laundering offense. The government is entitled to a personal money judgment against a defendant for an amount equal to the value of the property that was involved in the money laundering violation. *United States v. Voigt*, 89 F.3d 1050, 1084–1088 (3d Cir.1996); *United States v. Candelaria–Silva*, 166 F.3d 19, 42 (1st Cir.1999)(criminal forfeiture order may take several forms, including substitute assets).

■ The jury found defendant guilty of counts XVI and XVII which dealt with a 2001 GMC Denali SUV purchased by defendant from 1800 Motorcars. The purchase price of the Denali was 38,500.[15] (D.I. 137 at 176) The jury's verdict demon-

---

**14.** Count XVI charged defendant with money laundering on or about August 14, 2002. (D.I.80) Count XVII charged defendant with money laundering on or about February 3, 2003.

**15.** The Denali was sold at government auction for $30,000, resulting in $8,500 as unsat-

isfied. (D.I.141, 166) The court finds plaintiff is entitled to the remaining $8,500. *See United States v. Hawkey*, 148 F.3d 920, 927–929 (8th Cir.1998). Plaintiff will account for funds recovered in the sale of the Denali in the proposed preliminary order of forfeiture to be provided to the court.

strates that the transaction was used to conceal the proceeds of unlawful activity and the proceeds used in the transaction were proceeds of unlawful activity. The court finds that $38,500 represents the amount involved in the offenses charged in counts XVI and XVII.

## III. JUDGMENT OF ACQUITTAL [16]

■ In evaluating a motion for judgment of acquittal, the court must ascertain whether any reasonable jury, when considering the evidence in the light most favorable to the government, "could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In ruling on a motion for judgment of acquittal, the court must " 'review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence.' " *United States v. Smith,* 294 F.3d 473, 476 (3d Cir.2002)(*quoting United States v. Wolfe,* 245 F.3d 257, 262 (3d Cir.2001)). All reasonable inferences should be drawn in favor of a jury's verdict. *Smith,* 294 F.3d at 476. Courts must be ever vigilant in the context of Fed.R.Crim.P. 29 not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury. *United States v. Jannotti,* 673 F.2d 578, 581 (3d Cir.1982).

### A. Count II

Defendant asserts judgment of acquittal is mandated on count II because the evidence was insufficient to convict him as either a principal or aider or abettor.[17] (D.I.163) Specifically, he submits that plaintiff failed to prove that he did something to help or encourage the crime with the intent that the crime be committed. He characterizes the trial evidence as follows: On February 21, 2002, defendant was at his place of business and was approached by Melvin Barner. They exchanged phone numbers in order to keep in touch with each other. Barner asked defendant where drugs could be purchased. (D.I. 146 at 207–211) Defendant indicated that some drugs would be available later in the day and suggested that Barner call later. However, Barner never called defendant nor did defendant call Barner about the drug transaction. Instead, Ricardo Rogers inquired about Barner and was told by defendant that he wanted to purchase drugs. (*Id.* at 117–119, 1–10) Defendant told Rogers to take care of Barner and gave him Barner's phone number. When Barner later appeared at defendant's store and informed defendant that he lost Rogers phone number, defendant dialed Rogers' phone number and handed the telephone to Barner.

Subsequently, Barner and Rogers met and the drug transaction was consummated in an alleyway. (D.I. 147 at 1–15) Defendant was not present at this deal, but learned the next day when Barner called him to complain that the package

16. Defendant's moving papers challenge only count II, however, the scope of the motion broadened when his counsel requested that the court incorporate and consider all of his pro se arguments. (D.I.178) Defendant's pro se submissions attack the integrity of the prosecution, the prosecuting attorneys, the investigation and the officers involved. He also asserts that all of the government witnesses

were lying and that evidence was fabricated in order to ensure a conviction. (D.I.165, 169, 172, 173, 174, 175)

17. The court instructed the jury on both principal and aider and abettor theories. (D.I. 124) It is impossible to determine under what theory the jury found defendant guilty of count II. (D.I.126)

was light and defendant agreed to pass this information to Rogers. (*Id.* at 10–25) These events demonstrate, argues defendant, that despite Barner's repeated attempts to engage him in drug dealing, he resisted. The drug deal instead was entirely and exclusively between Barner and Rogers and, as such, there was insufficient evidence to convict him as a principal.

Likewise, defendant asserts, there was insufficient evidence to convict him as an aider and abettor. To convict a defendant on an aiding and abetting theory, the prosecution must prove that another individual committed the substantive offense and that the one charged with aiding and abetting knew the substantive offense was committed and acted with the intent to facilitate it. *United States v. Salmon*, 944 F.2d 1106, 1113 (*citing United States v. Dixon*, 658 F.2d 181, 189 n. 17 (3d Cir. 1981)). Defendant argues that the evidence at trial demonstrates that the drug transaction was exclusively between Barner and Rogers and that defendant's involvement was insufficient to implicate aider or abettor conduct.

Both Barner and Rogers testified as witnesses at trial for plaintiff and explained in detail their involvement with drugs and defendant. Central to their testimony was defendant's role as: (1) the supplier of the narcotics; (2) partner with Rogers in drug dealing; and (3) the facilitator of the transaction between Barner and Rogers. (D.I. 146 at 99–120, 132, 206–211; GX 50–C; GX–2; D.I. 147 at 10–18) Considering this record under *Jackson v. Virginia* and its progeny, the court finds there to be sufficient evidence supporting defendant's conviction as a principal or under an aider and abettor theory.

### B. Remaining counts of conviction

As noted, defendant challenges the crux of the investigation, witnesses and prosecution as deceitful, corrupt and with-

out merit. Although defendant meticulously details every perceived injustice, his claims can essentially be reduced to attacks on the credibility of the witnesses who testified against him. The court's role on review under Fed.R.Crim.P. 29, however, is to refrain from second guessing the credibility determinations made by the jury. *United States v. Scarfo*, 711 F.Supp. 1315, 1334 (E.D.Pa.1989) ("it is up to the jury to weigh conflicting testimony, determine credibility, and ultimately draw factual inferences"). A court's finding of insufficiency should be limited to cases where the prosecution's failure is clear. *United States v. Smith*, 294 F.3d 473, 476 (3d Cir.2002).

## IV. CONCLUSION

For the reasons stated, the court grants plaintiff's application for forfeiture in the amount of $292,000 and denies defendant's motion for judgment of acquittal. An appropriate order shall issue.

## ORDER

At Wilmington this 8th day of July, 2005, for the reasons stated in the memorandum opinion issued this same date;

IT IS ORDERED that:

1. The court finds $292,000 represents the total amount for forfeiture. Plaintiff shall submit a proposed order for forfeiture by July 18, 2005.

2. Defendant's motions for judgment of acquittal are denied. (D.I.131, 163)