**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Keith Lynn JENKINS,
Defendant–Appellant.**

**No. 87–1797.**

United States Court of Appeals,
Tenth Circuit.

May 31, 1990.

Vicki Mandell–King, Asst. Federal Public Defender (Michael G. Katz, Federal Public Defender, with her on the brief), Denver, Colo., for defendant-appellant.

Wayne T. Dance, Asst. U.S. Atty. (Brent D. Ward, U.S. Atty., with him on the brief), Salt Lake City, Utah, for plaintiff–appellee.

Before HOLLOWAY, Chief Judge, SEYMOUR, Circuit Judge, and BROWN,* District Judge.

SEYMOUR, Circuit Judge.

In a joint trial, Keith Lynn Jenkins was convicted of multiple counts of possession with intent to distribute and distribution of cocaine and marijuana, 21 U.S.C. § 841(a)(1) (1988) and 18 U.S.C. § 2 (1988); one count of conspiracy to possess and distribute controlled substances, 21 U.S.C. § 846 (1988); multiple violations of the Travel Act, 18 U.S.C. § 1952 (1988); one count of engaging in a continuing criminal enterprise, 21 U.S.C. § 848 (1988); several counts of distribution of a controlled substance to a person less than twenty-one years of age, 21 U.S.C. § 845 (1988); and four counts of income tax evasion, 26 U.S.C. § 7206(1) (1988). Criminal forfeiture orders were obtained against Jenkins' property in the same proceeding under 21 U.S.C. § 853 (1988). We are not persuaded by the various issues Jenkins raises on appeal, and we therefore affirm his conviction on all counts.

I.

BACKGROUND

This case involves a large Utah-based cocaine and marijuana distribution network. Jenkins was originally named in a ninety-two count indictment which charged six defendants with conspiracy, multiple substantive drug violations, and a variety of associated crimes. The government filed a ninety-six count superseding indictment which added tax evasion charges against Jenkins. Among the numerous charges, count one alleged a single conspiracy by Jenkins and the other five defendants to possess and distribute controlled substances, and count two charged Jenkins with a managerial, supervisory or organizer's role in concert with at least five other persons, as part of a continuing criminal enterprise. See 21 U.S.C. § 848.

Two of the six defendants pled guilty before trial, and the four remaining defendants began trial before one jury. Two weeks into trial, the attorney for defendant Michael Patrick Doran became sick and a mistrial was declared as to Doran.[1] The substantive criminal counts and the criminal forfeiture actions against Jenkins, Craig William McLachlan, and James Arthur Mann went to the jury.

The evidence against Jenkins at trial consisted primarily of the testimony of lesser participants in the drug distribution system who testified in exchange for grants of immunity. Jenkins did not testify. The government's proof established generally that from approximately 1980 through 1983, Jenkins regularly imported or obtained delivery in Utah of shipments of up to 150 pounds of marijuana, usually purchased from co-defendant Michael Doran in Arizona. Jenkins would distribute this marijuana to or through various smaller-scale wholesalers and retailers in the Salt Lake City and Utah County area. In addition, Jenkins would import or obtain delivery of cocaine, in quantities of one-quarter pound up to three kilograms. Jenkins often purchased and distributed this cocaine for resale in partnership with co-defendant Craig McLachlan, at least until an apparent "rift" developed between them in October 1981. Profits from these sales were invested into real estate, aircraft, businesses, money market funds, and bank accounts. These assets were the subject of the criminal forfeiture proceedings held jointly with the trial on the substantive criminal charges. Jenkins did not object to the unitary treatment of the substantive criminal counts and the forfeiture actions.

The jury found Jenkins guilty of the great majority of the counts against him. Forfeiture orders were entered against him contemporaneously with the return of the verdict on the criminal counts. Jenkins was sentenced to twenty years on the con-

---

* The Honorable Wesley E. Brown, United States District Judge for the District of Kansas, sitting by designation.

1. Doran was retried separately and convicted of seven counts upon a separate, superseding indictment. On appeal, Doran's conviction on seven counts was affirmed as to five counts, and was reversed on Speedy Trial Act grounds as to the two remaining counts, which had originated in the initial indictment. *See United States v. Doran*, 882 F.2d 1511 (10th Cir.1989).

tinuing criminal enterprise conviction, and the sentence on the conspiracy charge was vacated as a lesser included offense. The sentences imposed on the various substantive drug charges were to run concurrently, while a three-year tax evasion sentence was to run consecutively.

On appeal, Jenkins asserts insufficient evidence to convict on the continuing criminal enterprise count, a variance between the conspiracy charge and the proof of conspiracy at trial, improper introduction of prejudicial and irrelevant evidence and of other wrongful acts under Fed.R.Evid. 404(b), erroneous denial of a severance motion, improper use of a Fed.R.Crim.P. Rule 16(d)(2) sanction resulting in inability to use a prior inconsistent statement to impeach, failure to bifurcate the forfeiture proceedings from the guilt phase of Jenkins' criminal trial, and grand jury abuse.

## II.

### A. Continuing Criminal Enterprise

■ Jenkins argues that the jury had insufficient evidence to convict him on the continuing criminal enterprise charge. Evidence is sufficient to support a criminal conviction if, viewing all the evidence most favorably to the prosecution, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Apodaca*, 843 F.2d 421, 425 (10th Cir.) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)), *cert. denied*, 488 U.S. 932, 109 S.Ct. 325, 102 L.Ed.2d 342 (1988).

■ Conviction on a continuing criminal enterprise charge requires (1) a felony violation of a drug law contained in the Controlled Substance Act, 21 U.S.C. §§ 801 *et seq.* (1988); (2) constituting part of a continuing series of such violations; (3) undertaken in concert with five or more other persons; (4) with respect to whom [the defendant] occupies a position of organizer, supervisor, or any other position of

management; and (5) from which [the defendant] obtains substantial income or resources. *See* 21 U.S.C. § 848(c) (1988); *see also United States v. Hall*, 843 F.2d 408, 410 (10th Cir.1988).[2] Jenkins maintains that it was he who took orders from most of the persons with whom he was involved, and that the evidence does not enable one to specify five persons over whom he exercised the requisite managerial, supervisory, or organizing authority. We disagree.

■ The statutory terms "organizer," "manager," and "supervisor" have non-technical, "everyday meanings." *See Apodaca*, 843 F.2d at 425–26; *United States v. Dickey*, 736 F.2d 571, 587 (10th Cir.1984), *cert. denied*, 469 U.S. 1188, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985). Section 848's use of the indefinite article when describing "*a* position of organizer" or "*a* supervisory position or *any other* position of management" contemplates that a given network may have many persons in authority. Thus, the defendant need not be the dominant organizer or manager of the enterprise; he need only occupy *some* managerial position with respect to five or more persons. *See Apodaca*, 843 F.2d at 426 (citing cases). Moreover, "[t]he defendant's relationships with the other persons need not have existed at the same time, the five persons involved need not have acted in concert at the same time or with each other, and the same type of relationship need not exist between the defendant and each of the five." *Id.* While proof of a buyer-seller relationship alone is insufficient to establish a managerial role, *id.*, additional evidence of formal or informal authority or responsibility respecting a purchaser's conduct may suffice, *see United States v. Jones*, 801 F.2d 304, 309–10 (8th Cir.1986) (requisite role evidenced by setting terms and method of transaction, directing wholesale purchaser as to manner of sale, furnishing financial and legal help, and supplying directions and/or training to subordinate wholesalers); *see also United States v. Ray*, 731 F.2d 1361, 1367 (9th

---

**2.** The definition of a continuing criminal enterprise in the version of the statute in effect at the time these offenses occurred was found at 21

U.S.C. § 848(b). The identical definition occurs in the current version at 21 U.S.C. § 848(c).

Cir.1984) (not necessary to show defendant is able to control those whom he or she organizes).

In the present case, the evidence reflects that Jenkins participated at different times as a partner, rival, or arguably even as a subordinate of persons with whom he did business. But simply because Jenkins was not the "king pin" does not mean that he did not have his share of minions. *Cf. United States v. Becton,* 751 F.2d 250, 255 (8th Cir.1984) (irrelevant that defendant is subject to supervision of superiors), *cert. denied,* 472 U.S. 1018, 105 S.Ct. 3480, 87 L.Ed.2d 615 (1985).

Kim Barker and Dale Lowder, for example, sometimes helped Jenkins store large quantities of marijuana at their home in exchange for a discount on the drug, *see* rec., vol. 13, at 45–54, and helped Jenkins obtain a drug delivery, *see id.* at 205–07. Jenkins regularly fronted them drugs, *see id.* at 65–78, 81–84, threatened their children when payment was late, *see id.* at 216, made Lowder quit-claim his house as security, *see id.* at 135–37, and directed when and how to make payment, *see id.* at 152. Finally, Jenkins told Lowder to whom not to sell. *See id.* at 210–11.

Curtis Slack helped broker several of Jenkins' cocaine purchases in Florida. *See* rec., vol. 16, at 518–35, 553–67. Most im-portantly, Slack couriered the drug for Jenkins from Florida to Utah, *see id.* at 579–82, after following Jenkins' instructions on how to package it, *see id.* at 560. Finally, Jenkins bailed Slack out of jail after his arrest for couriering the drugs. *See id.* at 596.

■ Brian Smith obtained marijuana from Jenkins on credit. He couriered Jenkins' purchases of marijuana from Arizona to Utah, *see* rec., vol. 23, at 1680–83, and would then store the marijuana for Jenkins at his home. Guy Robertson acted as Jenkins' agent in marijuana transactions in Jenkins' absence. *See* rec., vol. 23, at 1533, 1599. Finally, Wendell and Sherry Olsen arranged for the storage of marijuana for Jenkins when he needed it, *see id.* at 1530, 1537, followed his advice concerning price-setting, *see id.* at 1603, and complied with Jenkins' request to gain introductions for new sales contacts, *see id.* at 1546–47. Based on this evidence, a rational trier of fact could easily conclude beyond a reasonable doubt that Jenkins occupied a managerial position as defined in the cases at least as to these seven persons.[3] *See Apodaca,* 843 F.2d at 427. We therefore affirm the conviction on the continuing criminal enterprise count.[4]

---

**3.** Jenkins complains for the first time in his Reply Brief that he was never specifically informed either in the indictment or the bill of particulars of the persons whose activities he allegedly organized, managed, or supervised. Although he requested that the government be required to supply the information, he did not appeal to the district court the denial of his motion by the magistrate.

Jenkins also tangentially argues for the first time in his Reply Brief that the jury could have disagreed on which five people satisfied the element of the continuing criminal enterprise count, thereby violating the requirement of unanimity in the jury verdict. *See* Fed.R.Crim.P. 31(a); *Apodaca v. Oregon,* 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972) (five justices agree on implicit Sixth Amendment right to unanimous verdict in federal criminal trials). Jenkins did not identify the unanimity issue in the Statement of Issues in his Opening Brief. Moreover, raising the issue only in the Reply Brief affords the government no opportunity to address it. Given the complexity of the question, we decline to consider it without adequate brief-ing from both sides. *See* Fed.R.App.P. 28(a)(2), (4) (requiring statement of issues in briefs and legal argument respecting the issues presented on appeal); *United Transp. Union v. Dole,* 797 F.2d 823, 827 (10th Cir.1986) (issue may be abandoned or waived by inadequate development in the briefs).

**4.** Jenkins vigorously argues in his Opening Brief that the indictment charging his involvement in a single drug conspiracy varied from what Jenkins characterizes as proof of multiple conspiracies adduced at trial. In his Reply Brief, however, he acknowledges that the action of the court in vacating his conspiracy sentence as a lesser included offense of the continuing criminal enterprise charge makes the variance issue significant only if the continuing criminal enterprise conviction is reversed on appeal. Our affirmance of the CCE issue thus obviates the need to discuss the variance issue.

To the extent the factual contentions underlying the variance argument have relevance to other issues in our discussion, we will discuss them separately.

## B. Evidentiary Rulings

### 1. Testimony concerning McLachlan's violence

▮ Over the relevancy objection of Jenkins and other co-defendants, the district court admitted testimony of certain violent acts of co-defendant McLachlan. For example, there was testimony that McLachlan tried to strike an employee of his nightclub with a sledgehammer, and that he used the hammer to damage the side of his adversary's car. The jury also heard evidence that McLachlan convinced the girlfriend of Curtis Slack to pose for sexually explicit photographs in return for legal help for her boyfriend, who had been arrested while transporting cocaine allegedly ordered by Jenkins. Finally, on two occasions testimony revealed that McLachlan had threatened individual employees of his club, once with a gun.

Jenkins argues that the probative value of this evidence as to McLachlan is substantially outweighed by the possibility of unfair prejudice to Jenkins. *See* Fed.R. Evid. 403. In considering this question, we first take note of the broad discretion given the trial court in a Rule 403 balancing analysis. *See United States v. Cuch*, 842 F.2d 1173, 1175 (10th Cir.1988). We also note that Jenkins raised no Rule 403 objections when the evidence was introduced below. Finally, the trial court twice gave cautionary instructions to the jury immediately after the testimony, admonishing jury members that the testimony had "nothing to do with Mr. Jenkins." Rec., vol. 18, at 1045–46; *see also id.*, vol. 19, at 1184.

We conclude that Jenkins was not unfairly prejudiced by the testimony. Little danger existed that the jury could have confused McLachlan with Jenkins or that the testimony concerning McLachlan would unfairly bias the jury against Jenkins. In fact, Jenkins was acquitted on nine of the fifty counts against him that went to the jury. Any danger of unfair prejudice was ameliorated by the limiting instructions. *See United States v. Pinto*, 838 F.2d 426, 434 (10th Cir.1988) (special limiting instruction enables jury to compartmentalize the evidence as to each of the defendants). Accordingly, we affirm the trial court's evidentiary rulings concerning McLachlan's activities.[5]

### 2. Bad acts concerning Doran

▮ The district court also admitted evidence of co-defendant Michael Patrick Doran's prior drug activities under Fed.R. Evid. 404(b) as probative of Doran's motive, intent, preparation, plan, knowledge, and identity regarding the drug conspiracy. Jenkins argues that admission of this Rule 404(b) evidence was not "necessary to bolster the government's case against Doran," Opening Brief at 26, and that the jury would unfairly attribute these acts to Jenkins, whom the government alleged was supervising Doran.

The validity of the introduction of this evidence against Doran has already been ruled upon by this court. *See United States v. Doran*, 882 F.2d 1511, 1523–25 (10th Cir.1989). We held that the evidence was properly admitted to show that Doran intended to enter into the conspiracy and knew the nature of it. *Id.* at 1524. We did not consider the issue of unfair prejudice against co-defendant Jenkins, however.

Immediately following the admission of the evidence, the trial court instructed the jury that "[t]his testimony is not to be considered by you as it relates to any of the charges ... against Jenkins.... [Y]ou must not consider this evidence as it relates to the charges against any of the other

---

5. Jenkins also argues that this evidence was character evidence under Fed.R.Evid. 404(b). We do not agree. The evidence was admitted not to prove action in conformity with a criminal character, but rather to show McLachlan's involvement in Slack's cocaine delivery in one instance, and to show the duration of McLachlan's involvement in overt acts underlying the cocaine conspiracy through relations with employees in his club in the other instances. *See*
United States v. Rodrequez, 859 F.2d 1321, 1326–27 (8th Cir.1988) (violent acts of conspirator in drug ring related to birth and nature of conspiracy and not Rule 404(b) evidence), *cert. denied,* —— U.S. ——, 109 S.Ct. 1326, 103 L.Ed.2d 594 (1989). In any event, we question Jenkins' standing to object to evidence admitted against a co-defendant where he suffers no prejudice as a result.

three defendants in this case." Rec., vol. 16, at 22. We believe that this cautionary instruction adequately safeguarded Jenkins from any prejudicial effect the Rule 404(b) testimony may have had. *See Pinto*, 838 F.2d at 434; *see also United States v. Williams*, 897 F.2d 1034, 1037–38 (10th Cir. 1990) (presumption of effectiveness of cautionary instruction).

### 3. Denial of opportunity to impeach with a prior inconsistent statement

■ A major prosecution witness against Jenkins was Curtis Slack, who testified that he couriered large quantities of cocaine from Florida for Jenkins. During cross examination, Jenkins sought to introduce a document purportedly containing a statement Slack made to a lawyer to the effect that the cocaine he transported did not belong to Jenkins. The trial court denied Jenkins the opportunity to use the document or its contents because it had not been provided to the government under the magistrate's reciprocal discovery order. *See* rec., vol. 2, doc. 235 at 1; *see also* Fed.R.Crim.P. 16(b).

Jenkins argues on appeal that the court abused its discretion by refusing to admit the document. The government responds that the court's choice of sanction was well within its discretion. The relevant rule provides:

> "*Failure to Comply with a Request*
> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, *or prohibit the party from introducing evidence not disclosed,* or it may enter such other order as it deems just under the circumstances."

Fed.R.Crim.P. 16(d)(2) (emphasis added). Jenkins maintains that, given the importance of Slack's testimony to several substantive charges and to the continuing criminal enterprise charge, the trial court should have continued the trial or permitted an inspection instead of refusing to admit the evidence. The record does not contain a copy of the document.[6] Accordingly, we are unable to rule on this issue. *See generally Moore v. Subaru of America*, 891 F.2d 1445, 1448 (10th Cir.1989) (deferral to trial court appropriate where record on appeal is insufficient to substantiate general allegations of error).

### C. Severance

■ The district court denied Jenkins' pretrial motion to sever, as well as his mid-trial motion for mistrial or severance arising out of the court's admission of McLachlan's violent acts. Jenkins maintains that these denials were an abuse of the trial court's discretion, resulting in actual prejudice. *See Williams*, 897 F.2d at 1037 (defendant must show specific prejudice to warrant reversal of denial of severance motion); *United States v. Wright*, 826 F.2d 938, 945 (10th Cir.1987) (reversal for denial of severance motion must be based on abuse of discretion resulting in actual prejudice); *see also United States v. Hernandez*, 829 F.2d 988, 990 (10th Cir.1987) (defendant's burden to show abuse of discretion is "difficult;" "strong showing of prejudice" required), *cert. denied*, 485 U.S. 1013, 108 S.Ct. 1486, 99 L.Ed.2d 714 (1988).

■ Jenkins argues that he was prejudiced by the admission of evidence reflecting McLachlan's violent nature due to its purported spillover effect. Our analysis above demonstrates that Jenkins was unable to show sufficient danger of prejudice arising from this testimony in a Fed.R. Evid. 403 context, particularly where the

---

6. Jenkins' counsel represented in the Opening Brief at 31 that she would supplement the record upon receipt of the document from a co-defendant's counsel. To our knowledge, the record was never supplemented. Even if we were to rule, the trial court appears to have properly exercised its discretion. Counsel for Jenkins was aware of the document at least some days prior to its attempted introduction, but never apprised the government of its existence until the moment its admission was sought to impeach. Such tactics run directly contrary to the spirit of the mutual discovery order. *See* Fed.R.Crim.P. 16(c) (requiring prompt notification of adversary's counsel upon discovery of additional evidence or material previously requested or ordered).

district court gave appropriate cautionary instructions. Our prior analysis is dispositive of the severance issue, since Jenkins' burden in the severance context is the heavier one of a strong showing of actual prejudice. *See Williams*, 897 F.2d at 1037 (severance not warranted based on allegation of spillover effect upon co-conspirator defendant).

Moreover, the joint trial of Mann, Doran, Jenkins, and McLachlan substantially advanced the judicial-efficiency rationale behind the rules encouraging joinder of defendants. *See* Fed.R.Crim.P. 8(b). Jenkins and his co-defendants were jointly indicted and faced common conspiracy charges.[7] *See Wright*, 826 F.2d at 945 (individual conspirators should be tried together); *United States v. Rinke*, 778 F.2d 581, 590 (10th Cir.1985) (persons jointly indicted should be tried together). Jenkins and McLachlan were also alleged to have worked together as partners, leading to six joint charges on substantive counts. Given Jenkins' inability to show prejudice, as well as a substantial factual overlap in the charges against Jenkins and McLachlan, the trial court acted within its discretion in denying a severance.

## D. Bifurcation

■ In a separate indictment, the government initiated extensive criminal forfeiture proceedings under 21 U.S.C. § 853 against property belonging to Jenkins. Evidence pertaining to the forfeiture issues was admitted during the guilt phase of Jenkins' trial, and the jury returned its verdict the same day on both the criminal counts and the forfeiture of his property.

Jenkins did not move below for separate jury consideration of the forfeiture issue after the guilt phase of the trial, but now asserts that it was plain error for the trial court not to require the jury to hear the case in two phases.

We have not addressed the question of when, if ever, a jury should be required to determine a defendant's guilt *before* it is allowed to consider evidence and/or arguments pertaining to forfeiture. Other circuits have varying views. In *United States v. Sandini*, 816 F.2d 869 (3d Cir. 1987), the district court held a partially bifurcated trial, in spite of the defendant's request for a fully bifurcated proceeding. The court required all evidence relating to forfeiture to be presented to the jury during the guilt phase, and limited the forfeiture phase of the trial to arguments of counsel and jury instructions relating to that issue. The Third Circuit recognized that the trial court's procedure presented the defendant with the Hobson's choice of foregoing testifying to protect his property from forfeiture or waiving of his Fifth Amendment privilege not to testify at his criminal trial.[8] The court observed that a defendant's position is exacerbated by the rebuttable presumption in the forfeiture statute favoring the government,[9] and the court pointed out that "the right of rebuttal may be illusory when made contingent on waiving the privilege not to testify during trial." *Id.* at 874. Accordingly, the court exercised its supervisory power over the conduct of criminal trials to require complete bifurcation of *in personam* criminal forfeiture proceedings from the guilt phase of a criminal trial. *Id.*

7. Jenkins maintains in his Reply Brief that the proof at trial revealed multiple, separate conspiracies as to which both McLachlan and Jenkins were not common members. Even if we were to accept that proposition, however, the evidence did show that Jenkins and McLachlan were partners in a single distribution system at least up to October, 1981, when the rift occurred between them.

8. The court described the dilemma as follows: "A criminal defendant has the right to decline to testify at trial. He also may insist that his property not be taken without due process of law.... [T]he defendant's right to retain prop-

erty arguably not subject to forfeiture should not be compromised or defeated by his decision to stay off the witness stand during the guilt phase of the trial." 816 F.2d at 873.

9. 21 U.S.C. § 853(d) provides a rebuttable presumption that property of a person is subject to forfeiture when the person is convicted of a felony under the Controlled Substance Act, and where the government shows by a preponderance of the evidence that the property was acquired during the period of the violation and that no other likely source for funds exists.

In *United States v. Perholtz*, 842 F.2d 343 (D.C.Cir.) (per curiam), *cert. denied*, 488 U.S. 821, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988), the defendant's pretrial request for separate proceedings on RICO forfeiture charges, *see* 18 U.S.C. § 1963(a) (1988), was denied. After concluding that a wholly unitary proceeding was consistent with due process,[10] the court declined to adopt a judicially-crafted procedural rule requiring any bifurcation whatsoever, much less respecting the taking of evidence. *Id.* at 367–68.

The Ninth Circuit in *United States v. Feldman*, 853 F.2d 648 (9th Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 1164, 103 L.Ed.2d 222 (1989), adopted a more fact-bound approach to the problem. After the jury returned a guilty verdict, but before it retired to deliberate on the special verdict required in forfeiture proceedings, the defendant there requested a separate evidentiary hearing on RICO forfeiture issues. The district court denied the request. On appeal, the court held that "[u]nder some circumstances a single procedure may be unfair, where for example the evidence is very complex, there are evidentiary difficulties, or testimonial privileges are clearly implicated." *Id.* at 662. In other situa-

tions, however, evidence of guilt may satisfy forfeiture requirements and a single procedure would not be prejudicial.[11] The court noted that trial courts "should bifurcate forfeiture proceedings from ascertainment of guilt, requiring separate jury deliberations and allowing argument of counsel." *Id.* Bifurcation on the taking of evidence was left to trial court discretion, although "[i]f the defendant can show ... that a hearing is required on the extent of his or her assets subject to forfeiture, the court should allow evidence on the issue." *Id.*

█ We appreciate the unfair dilemma, described in *Sandini*, that a defendant faces when the jury hears evidence pertaining to forfeiture and criminal guilt in one sitting. The dilemma disappears, however, if the defendant does not intend to testify concerning the forfeiture. In such a case, it works no harm upon the defendant to emphasize the convenience and economy for the court, subpoenaed witnesses, and others involved by allowing evidence to be taken in a single proceeding. We hold, therefore, that the responsibility rests on the defendant and counsel to make the trial court aware of a desire to testify on the

**10.** The court in *Perholtz* concluded that the Supreme Court's decision in *McGautha v. California*, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971), *vacated in part on other grounds*, 408 U.S. 941–42, 92 S.Ct. 2873, 33 L.Ed.2d 765 (1972), foreclosed a due process challenge to a unitary proceeding in the criminal forfeiture context. *See* 842 F.2d at 367–68. In *McGautha*, a defendant in a capital case argued that the Ohio state court's procedure determining guilt and punishment in a single trial with a single verdict offended the due process clause by compelling the defendant to exercise his rights of allocution during trial to avoid the death sentence. The Court found the unitary procedure consistent with due process, reasoning first that the prospect of losing the right of allocution before one's sentence does not amount to sufficient compulsion to testify, *id.* at 217, and second that Ohio had no obligation to allow the defendant to speak concerning punishment free of adverse consequences on guilt. *Id.* at 220.

The court in *Perholtz* found this reasoning persuasive in the criminal forfeiture context, since "'forfeiture under RICO is an in personam penalty designed as part of the punishment for the criminal offense committed'". 842 F.2d at 367 (quoting *United States v. Kravitz*, 738 F.2d

102, 106 (3d Cir.1984), *cert. denied*, 470 U.S. 1052, 105 S.Ct. 1752, 84 L.Ed.2d 816 (1985)). The court in *United States v. Sandini*, 816 F.2d 869, 874 (3d Cir.1987), found it unnecessary to decide the constitutionality of a unitary proceeding involving the *in personam* criminal forfeiture statute for drug trafficking. The court did note, however, that both the self-incrimination clause *and* the prohibition against governmental deprivation of property without due process were implicated. *Id.* at 873. The Ninth Circuit in *United States v. Feldman*, 853 F.2d 648, 661 (9th Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 1164, 103 L.Ed.2d 222 (1989), also declined to rule on the constitutionality, although it remarked cryptically that failure to bifurcate is "not necessarily unconstitutional." *Id.* Jenkins does not argue that bifurcation is constitutionally required. Thus, as in *Sandini* and *Feldman*, our discussion here has no bearing on the constitutional issues a unitary proceeding may raise.

**11.** The court in *Feldman* gave as an example a forfeiture action against a RICO enterprise, where a finding of guilt on criminal RICO charges satisfies all the elements necessary to forfeit the enterprise itself. *See Feldman*, 853 F.2d at 662; 18 U.S.C. § 1963(a) (1988).

forfeiture issues. If no such request is made, the trial court and the government are entitled to assume that evidence concerning guilt and forfeiture may be heard together.

In the present case, Jenkins argues that had the proceedings been bifurcated he "may well have desired to take the stand in his own behalf." Opening Brief at 40. In contrast to the defendants in *Sandini, Perholtz,*[12] and *Feldman,* Jenkins did not express at trial an intention to testify, nor did he request bifurcated proceedings, or advert to the dilemma described in *Sandini.* Consequently, the trial court was entitled to assume that Jenkins did not desire to testify concerning forfeiture, and the failure to require the jury to determine Jenkins' guilt before permitting it to hear evidence and/or arguments pertaining to forfeiture was not plain error.

 Jenkins also argues that the reading of jury instructions on forfeiture together with the instructions as to guilt created a real danger that the jury may have confused the differing burdens of proof. Only a preponderance of the evidence is required to establish the rebuttable presumption in the forfeiture statute,[13] while proof beyond a reasonable doubt is, of course, required to convict on the substantive criminal counts. While we agree with the Ninth Circuit in *Feldman* that the preferable procedure would have been to instruct the jury separately concerning forfeiture after return of the verdict on guilt, Jenkins failed to request any bifurcation of the guilt phase from the forfeiture phase of the trial. Because a cautionary instruction was given directly addressing the possibility of this type of confusion, the court did not commit plain

error when it gave the instructions in a single reading. *See United States v. Culpepper,* 834 F.2d 879, 883 (10th Cir.1987) (plain errors are those that "seriously affect the fairness, integrity or public reputation of judicial proceedings").

### E. Grand Jury Abuse

 Finally, Jenkins maintains that the trial court erred in not dismissing the indictment for grand jury abuse. After the government filed its superseding indictment, the grand jury heard additional testimony concerning Jenkins from several witnesses, including his mother. No subsequent superseding indictment was filed. Jenkins asserts that the government was attempting to obtain more evidence to strengthen its pending case against him, an improper use of the grand jury. *See United States v. Gibbons,* 607 F.2d 1320, 1328 (10th Cir.1979). He argues that the lower court erred in adopting the magistrate's conclusion that the primary purpose of the testimony was to investigate new charges, with only an incidental effect on the pending prosecution.

We said in *Gibbons* that the grand jury process is abused when the prosecutor uses it "for the primary purpose of strengthening the Government's case on a pending indictment or as a substitute for discovery, although this may be an incidental benefit." *Id.* In two *in camera* hearings, the magistrate found that Jenkins had failed to demonstrate this type of abuse. Jenkins' conclusory statements in his brief and our review of the record provide us with no reason to disturb that finding.

Moreover, Jenkins has not shown how the testimony before the grand jury

---

**12.** The District of Columbia Circuit in *Perholtz* flatly rejected the defendant's request for bifurcation, even where he requested it below. *See* 842 F.2d at 367. *Perholtz* involved RICO forfeiture under 18 U.S.C. § 1963(a) (1988), while the present case involves criminal forfeiture under 21 U.S.C. § 853 (1988). Since no similar request was made here, we need not decide whether the result in *Perholtz* is inconsistent with our suggested approach in the drug distribution forfeiture context. To the extent that the holding in *Perholtz* applies to forfeitures generally, however, we question its complete dis-

regard of the potential dilemma created in a unitary proceeding.

**13.** Jenkins does not challenge the use of the preponderance standard in the ultimate determination of whether property is subject to forfeiture pursuant to 21 U.S.C. § 853 (1988). We note the existence of some disagreement on this issue, *see, e.g., United States v. Hernandez-Escarsega,* 886 F.2d 1560, 1576–77 & n. 10 (9th Cir.1989), but we need not address it here.

amounted to prejudice. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988) (dismissal of indictment for prosecutorial misconduct before grand jury subject to harmless error analysis). Jenkins does not argue that the grand jury testimony was employed against him in any fashion or that it had any effect whatsoever on the fairness of his trial based on the indictment issued before any of the purported abuse occurred. His claim of grand jury abuse must therefore fail.

Jenkins' conviction is AFFIRMED.