951 F.2d 350
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Altamont FEARON, Defendant-Appellant.
 No. 91-3246.
 United States Court of Appeals, Sixth Circuit.
 Dec. 3, 1991.
 
 Before KEITH, DAVID A. NELSON and SILER, Circuit Judges.
 PER CURIAM:
 
 
 1
 Defendant Altamont Fearon ("defendant") appeals from the December 6, 1989, jury verdict and January 11, 1991, sentence in his conviction for conspiracy to distribute over five (5) kilograms of cocaine in violation of 21 U.S.C. § 846; for carrying on a continuing criminal enterprise in violation of 21 U.S.C. § 848; for aiding and abetting the maintenance of a place for the distribution of cocaine in violation of 21 U.S.C. § 856(a)(2); for distribution of cocaine in violation of 21 U.S.C. § 841; and for use of a communications facility to further unlawful activity. Defendant solely appeals his conviction and sentence for carrying on a continuing criminal enterprise. For the reasons stated below, we AFFIRM.
 
 I.
 
 2
 On June 9, 1989, defendant was named in 43 counts of an 81 count indictment for narcotics trafficking offenses. Defendant was identified by Drug Enforcement Agency ("DEA") personnel as one of the principals in an Ohio drug conspiracy during an investigation of a suspected drug dealer, Gladstone Page ("Page"), and Page's east coast drug network. DEA agents began the investigation of Page following his immigration from Jamaica to Philadelphia, Pennsylvania. The agents discovered that female couriers obtained cocaine from Page in New York and transported the narcotics by automobile to Columbus, Ohio. Prince Wint, the reputed head of a connected Cincinnati, Ohio operation, would drive to Columbus to obtain his narcotics supply and return to Cincinnati. Evidence adduced at trial indicated that defendant was the head of the Columbus operation.
 
 
 3
 The organization and transportation of narcotics and large sums of money was coordinated by Page in New York according to testimony by Stacie Andrews ("Andrews"). Andrews was the girlfriend of defendant and lived with co-defendant Stacy Carr. Andrews testified that she sold cocaine for defendant and that defendant set the prices for each of the ounces that she sold. Testimony at trial also indicated that Teresa Sutton sold cocaine for defendant. Additional evidence showed that Dorothy Martin and Curtis Bosley acted as distributors of the narcotic under the defendant's supervision.
 
 
 4
 Andrews also testified that she helped defendant count large sums of money prior to the money's transfer to Page in New York. Andrews indicated that she knew of four persons that defendant used to wire transfer funds to New York, including herself, Stacy Carr, Debra Carr, and Teresa Sutton. Further, testimony showed that despite defendant being unemployed, he consistently paid the rent for his apartment.
 
 
 5
 Defendant also coordinated with Page those persons who would transport narcotics and money to New York via automobile. Andrews indicated that co-defendants Carla Turner and Karen Davis were paid drivers for runs between New York and Columbus and that cocaine and large sums of money were hidden in a secret compartment in a blue Oldsmobile. Andrews testified that the secret compartment was operated by putting the car in reverse and putting a quarter under the steering wheel. On one occasion, Andrews witnessed defendant place $50,000 to $60,000 in the secret compartment of the blue Oldsmobile for a run to New York.
 
 
 6
 During the investigation of defendant, the district court also authorized the interception of defendant's phone line from May 1, 1989, through May 16, 1989. The government presented several of the tape recorded conversations at trial to further exhibit defendant's level of involvement in the conspiracy. During one call, defendant told co-defendant Debra Carr to bring him $1500 from the $1000 bundles in his apartment. In another call, Page explained to defendant that he (the defendant) was responsible for collecting all debts on buys in Columbus. Other calls involved defendant attempting to recruit additional female couriers to make narcotics runs in the customized Oldsmobile. Additional calls involved defendant telling his female couriers what to do while they were in New York. Finally, during a May 15, 1989, call, defendant spoke of the one kilogram of cocaine subsequently discovered in the Oldsmobile. During the call, the defendant stated: "No, I'm gonna drive a rental car man. I don't (sic) I'm to drive the blue car with it in it. No, I doubt they would have found the stash. I pray to God they don't find that shit. Boy, that's life."
 
 
 7
 Following defendant's arrest, the blue Oldsmobile was impounded. Initially, a search of the car proved fruitless. Task Force Officer Timothy Shocker testified that during a later search, officers located a kilogram of cocaine in a hidden compartment in the back fender well of the car. The secret compartment operated precisely in the manner that Andrews indicated to the authorities during the pretrial investigation and subsequently in her testimony. The jury was permitted to view the automobile and the secret compartment.
 
 
 8
 Following trial but before the case was submitted to the jury, defendant moved for judgment of acquittal on count 5 of the indictment which charged defendant with carrying on a continuing criminal enterprise. The district court denied defendant's motion. The district court also denied the defense motion to require a special verdict from the jury naming the five persons that defendant supervised within the meaning of the continuing criminal enterprise statute. The district court did instruct the jury that they must unanimously agree on who the five or more supervisees were in order to convict defendant of a continuing criminal enterprise. The jury subsequently returned a guilty verdict on Count 5 and other counts of the indictment. The jury hung as to the guilt or innocence of Karen Davis and Carla Turner. The jury convicted co-defendants Stacy Carr, Dorothy Martin, and Debra Carr on various counts.
 
 
 9
 On January 11, 1991, defendant was sentenced to 240 months on count 5 of the indictment and 292 total months on the remaining counts. The sentences for the counts of conspiracy, distribution, control of a narcotics storage facility, and use of a communication facility were to be served concurrently with the sentence imposed for the continuing criminal enterprise. Defendant filed a timely motion for appeal.
 
 
 10
 Count 5 of the indictment is the subject of this appeal. Defendant first contends that there is not sufficient evidence to support a conviction for count 5. Second, defendant contends that the court erred in failing to require the jury to name each of the five individuals supervised by defendant in the conspiracy in a special verdict. We address these challenges seriatim.
 
 II.
 
 11
 The Sixth Circuit has recently confirmed that there are five elements in a continuing criminal enterprise offense. United States v. English, 925 F.2d 154 (6th Cir.), cert. denied, 111 S.Ct. 2812 (1991). This Court defines the offense as "(1) a felony violation of the federal narcotics law; (2) as part of 'a continuing series of violations;' (3) 'in concert with five or more persons;' (4) for whom defendant is an organizer or supervisor; and (5) from which defendant derives substantial income." Id. at 156 (citing 21 U.S.C. § 848(c) (1988)). Defendant claims on appeal that the government failed to prove elements (3), (4) and (5) of the offense. He first asserts that the evidence was insufficient to prove that he managed, supervised or organized five or more persons in his drug operation. Second, defendant claims that the evidence was insufficient to show that he obtained substantial income or resources from the drug enterprise.
 
 
 12
 "[This] court may not reverse a jury's verdict if there is substantial evidence to support it." United States v. Chandler, 752 F.2d 1148, 1151 (6th Cir.1985). "Evidence is sufficient to support a criminal conviction if, viewing all evidence most favorable to the prosecution, 'any rational trier of fact could have found the essential element of the crime beyond a reasonable doubt.' " United States v. Jenkins, 904 F.2d 549, 553 (10th Cir.), cert. denied, 111 S.Ct. 395 (1990). Because the record provides substantial evidence with regard to all of the elements of a continuing criminal enterprise, we cannot disturb the jury's verdict.
 
 A.
 
 13
 Defendant first contends that he was not an organizer or supervisor of five or more persons within the meaning of 21 U.S.C. § 848(c). United States v. English, 925 F.2d 154 (6th Cir.1991), is instructive on this point. In English, this Court noted that although the relationship between the organizer and his subordinates was "somewhat loose", "simply purchasing cocaine from 'the organizer' standing alone is not enough to satisfy the relationship requirement." Id. at 157 (citation omitted). The relationship could be satisfied "by setting the prices of the drugs [and] ... by forcing his customers to pay promptly...." Id. (citing United States v. Jones, 801 F.2d 304, 308-09 (8th Cir.1986). Furthermore, a person can be "found to be under defendant's organization or supervision because she knew about the drug operation, took orders directly from defendant and helped in the drug business." Id. A broker/courier under defendant's supervision is also within the ambit of the statute. See id. (citing United States v. Jenkins, 904 F.2d 549, 554 (10th Cir.1990)).
 
 
 14
 Section 848 contemplates that a given network may have many principal actors. United States v. Jenkins, 904 F.2d 549, 553 (10th Cir.1990). Thus, defendant need not be the dominant organizer or manager of the enterprise; he need only occupy some managerial position with respect to five or more persons. Id. Additionally, defendant may not even have personal contact with the five supervisees "because organizational authority and responsibility may be delegated." United States v. Alvarez, 860 F.2d 801, 816 (7th Cir.1988), cert. denied, 490 U.S. 1051 (1989).
 
 
 15
 In this case, any trier of fact could have rationally concluded that defendant supervised or managed five or more persons given the evidence presented at trial. Testimony from Andrews indicated that defendant "set the prices" for the cocaine that she sold for him. Andrews testimony further indicated that defendant coordinated and supervised the trips that Karen Davis and Carla Turner made to New York. Evidence indicated that Teresa Sutton, Curtis Bosley, and Dorothy Martin also sold cocaine for defendant.
 
 
 16
 Taped telephone conversations presented at trial also revealed defendant telling co-defendant Debra Carr to bring him funds from the thousands of dollars in apparent drug proceeds stashed in his apartment. An additional conversation had Page relating to defendant that it was his responsibility to collect the debts from his Columbus buyers. Other conversations portray defendant's attempt to recruit additional female couriers, and defendant giving instructions to those couriers in New York.
 
 
 17
 Based on the evidence, a rational juror could easily have concluded that defendant was a supervisor or organizer of five or more persons in the criminal enterprise. We therefore find that the third and fourth elements of the continuing criminal enterprise were satisfied.
 
 B.
 
 18
 Defendant further contends that there was insufficient evidence to show that he obtained substantial income or resources from the drug enterprise. He asserts that his lack of lavish lifestyle supports this contention. In United States v. Bolts, 558 F.2d 316 (5th Cir.1977), cert. denied, 439 U.S. 898 (1978), the Fifth Circuit held that the government did not have to prove net income to sustain a continuing criminal enterprise violation. Id. at 321. The court observed:
 
 
 19
 [T]estimony showed substantial amounts of money passing through the hands of the parties to the transaction. Indeed, there was ample evidence that large quantities of heroin and cocaine passed through the trafficking operations and that many thousands of dollars change hands, some of which was received directly by [a defendant]. This satisfied the statutory requirement.
 
 
 20
 Id. Although the evidence showed that defendant had some financial troubles, the Fifth Circuit found that the evidence was indeed sufficient.
 
 
 21
 The Second Circuit has set forth a similar rationale. In United States v. Sisca, 503 F.2d 1337 (2nd Cir.), cert. denied, 419 U.S. 1008 (1974), the court noted that defendant's "position in the distribution network, the enormous quantities of narcotics involved ... and the substantial sums of money changing hands" were enough to ground the jury's finding that a defendant derived substantial income from the criminal enterprise. Id. at 1345-46.
 
 
 22
 This jury was equally equipped with evidence that defendant derived substantial income from the drug enterprise. Evidence strongly suggested that the defendant was the head of the Columbus branch of an east coast drug network. Evidence produced at trial showed that large sums of money transferred hands throughout the duration of defendant's known involvement. Andrews testified that she sometimes assisted defendant when he counted large sums of money. She also testified to defendant's lack of employment, yet ability to pay rent on his apartment. Moreover, a tape recorded conversation consisted of Page and defendant discussing the collection of debts in Columbus and defendant's responsibility for doing so. Finally, Andrews also witnessed defendant place between fifty and sixty thousand dollars in the secret compartment of the Oldsmobile for transport to New York.
 
 
 23
 In sum, the jury in this case was privy to sufficient evidence that could lead a rational trier of fact to conclude that defendant derived substantial income from the drug enterprise. Element five of the continuing criminal enterprise offense was thus met. Accordingly, this Court must reject defendant's challenge to the sufficiency of the evidence with regard to the continuing criminal enterprise conviction.
 
 III.
 
 24
 Defendant finally contends that the district court's jury instruction was improper with regard to count 5 because the district court failed to require the jury to name the five or more individuals supervised or organized by defendant in special verdict form. Defendant argues that this would be good practice in continuing criminal enterprise cases. Note that the court did instruct the jury to agree unanimously on the five persons that defendant organized or supervised in the conspiracy. This Court has spoken directly to the jury's charge for a continuing criminal enterprise stating: "[a]ll of the circuits addressing this issue have held that the CCE statute does not require that the jury unanimously agree on the five persons supervised by a defendant." United States v. English, 925 F.2d 154, 159 (6th Cir.1991) (emphasis added). "The trial court is 'vested with broad discretion in formulating its charge and will not be reversed unless the charge fails accurately to reflect the law' ". Id. at 158.
 
 
 25
 The Seventh Circuit addressed the issue at bar and found that a district judge was correct to instruct each juror that they need only "find that [the defendant] supervised five or more persons." United States v. Holguin, 868 F.2d 201, 203, n. 5 (7th Cir.), cert. denied, 493 U.S. 829 (1989). Thus, the Seventh Circuit held that each juror must simply find that defendant supervised some group of five persons in the continuing criminal enterprise without specifying who those individuals are. Accord United States v. Markowski, 772 F.2d 358, 364 (7th Cir.), cert. denied, 475 U.S. 1018 (1985).
 
 
 26
 The district court did not abuse its discretion by not requiring the jury in this case to name the five or more supervisees in a special verdict. The district court went beyond what is generally required in this and other circuits by instructing the jury that they must unanimously agree on the five people that defendant organized, supervised, or managed. See United States v. English, 925 F.2d 154, 159 (6th Cir.1991) (explicitly holding that the statute does not require such unanimity).
 
 
 27
 Defendant does make a sound argument that it would be good practice to require a jury to list those five or more persons that a conspirator supervised, but this is not required by statute or judicial precedent. Accordingly, this Court rejects defendant's challenge to the jury instruction.
 
 IV.
 
 28
 For the foregoing reasons, we AFFIRM the conviction and sentence by the Honorable John D. Holschuh, United States District Judge for the Southern District of Ohio.