61 F.3d 917
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Steve EMERY, Defendant-Appellant.
 No. 94-8000.
 United States Court of Appeals,
Tenth Circuit.
 July 28, 1995.
 HENRY
 ORDER AND JUDGMENT[1]
 
 1
 Before HENRY, McKAY, Circuit Judges, and KANE[2], Senior District Judge.
 
 Facts
 
 2
 Defendant-appellant Steve Emery appeals his conviction on charges of conspiracy to commit mail fraud, wire fraud, and money laundering under 18 U.S.C. 371. He contends on appeal that the evidence against him was insufficient. We disagree, and affirm.
 
 
 3
 Mr. Emery and two co-defendants, E. LaVay McKinley and George Jim Conway, were all tried on charges stemming from their involvement in illegal banking and investment schemes. It was established at trial that between early 1990 and late 1992 all three were involved in a constellation of ventures based in Florida and the Caribbean. One of these ventures was called World Fidelity Bank (WFB). Despite the name, WFB was never licensed to conduct banking business anywhere.
 
 
 4
 WFB, the brainchild of Mr. McKinley, made most of its money by selling bogus "certificates of deposit" that promised a rate of return considerably higher than that available for domestic investments. Some of this money was paid out to early investors; some was lost in speculation; some was simply pocketed by the defendants. However, WFB sent its investors fictitious monthly "earnings" statements and produced brochures, disseminated by WFB salesmen, misrepresenting what was being done with the money.
 
 
 5
 Mr. Emery began to sell these WFB certificates in South Dakota. He received sales commissions in several disguised forms, and told officials in that state that he did not and would not sell WFB securities there. In July 1992 he sold the parents of a disabled child a $200,000 CD "issued" by a nonexistent WFB branch on the island of Dominica. He then hand-carried a $5,000 check, partial payment from the investment, to Dominica. It appears from the record that the main purpose of the trip was to help WFB get a banking license on the island.
 
 
 6
 In October 1992, the FBI secretly videotaped two meetings attended by Mr. Emery, Mr. McKinley, other participants in WFB, and an undercover FBI agent posing as an accountant for a Colombian drug cartel. Soon after the second meeting, Mr. Emery, Mr. McKinley, and others were arrested and deported to Miami.
 
 Discussion
 
 7
 At trial Mr. Emery claimed that he was an unwitting pawn of Mr. McKinley, and that he had been duped into believing that WFB was strictly legitimate. Similarly, Mr. Emery contends on appeal that the government's evidence was insufficient to convict him because it did not establish that he knew WFB's aims were illegal. See United States v. Roberts, 14 F.3d 502, 511 (10th Cir.1993) (holding that the illegal object provides the common design to which each conspirator must assent).
 
 
 8
 Evidence is sufficient to support a criminal conviction if, viewing all the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Jenkins, 904 F.2d 549, 553 (10th Cir.1990). Here the only element at issue is Mr. Emery's knowledge of the true object of the conspiracy. Regarding that element, we employ the test set forth in United States v. Evans, 970 F.2d 663 (10th Cir.1992):
 
 
 9
 The best way to assess a defendant's intended involvement in a conspiracy is to examine the conspiracy from that defendant's point of view. What exactly did [the defendant] think [ ]he was joining?
 
 
 10
 Id. at 674.
 
 
 11
 In this case a jury could reasonably have found that Mr. Emery thought he was joining a scheme for the systematic fleecing of gullible investors. The Dominica trip alone could suffice to show that Mr. Emery knew the real nature of the "investments" he was selling. Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order. 151 F.R.D. 470 (10th Cir.1993)
 
 
 [2]
 Honorable John L. Kane, Jr., Senior District Judge, United States District Court for the District of Colorado, sitting by designation